**STATE of Missouri ex rel. RIPLEY COUNTY, Missouri, Relator,**

v.

**The Honorable R. Jack GARRETT, Judge of the Circuit Court of Carter County, Missouri, Respondent.**

No. 23241.

Missouri Court of Appeals,
Southern District,
Division One.

April 26, 2000.

Motion for Rehearing and Transfer to Supreme Court Denied May 18, 2000.

Application for Transfer Denied June 27, 2000.

D. Keith Henson, Paule, Camazine & Blumenthal, P.C., Clayton, for Relator.

John E. Toma, Jr., Richard L. Saville, Jr., Newman, Freyman, Klein & Gamache, P.C., St. Louis, for Charles David Smith, plaintiff in the underlying suit.

CROW, Presiding Judge.

Relator, a county of the third class, is one of five defendants in a lawsuit pending before Respondent. In that suit ("the underlying suit"), Charles David Smith ("Plaintiff") avers he was arrested without probable cause on or about May 28, 1995, in Ripley County by the county sheriff, Dennis Cox, and two of Cox's deputies, Steve Gant and Bruce Ridlen; that those

three officers and another deputy sheriff, Margaret Ayers, instigated a criminal prosecution against Plaintiff for forcible rape, forcible sodomy and felonious restraint; that Plaintiff was held in custody approximately twenty hours and compelled to post bond before being released; and that Ayers made false and slanderous statements about Plaintiff.

Plaintiff's three-count, second amended petition in the underlying suit pleads that the conduct of the four individual defendants occurred "in the course and scope of their employment" by Relator, hence Relator is liable for such conduct. In Count I, Plaintiff seeks actual and punitive damages against Relator and the four individual defendants for malicious prosecution; in Count II, Plaintiff seeks actual and punitive damages against Relator and the four individual defendants for false imprisonment; in Count III, Plaintiff seeks actual and punitive damages against Relator and Ayers for slander.

Relator moved for summary judgment in the underlying suit, averring all claims against it are barred "by the doctrine of sovereign immunity."

Plaintiff answered Relator's motion by alleging Relator purchased insurance for

1. Rule 97.06, Missouri Rules of Civil Procedure (2000), which pertains to prohibition, reads, *inter alia:* "Any of the parties below may, within the time fixed for the respondent to answer, file an answer to the petition...." Rule 94.06, which pertains to mandamus, contains a similar provision.

2. Another statute, § 537.600, RSMo 1994, waives sovereign immunity as to certain types of claims. However, Plaintiff concedes Relator's sovereign immunity against Plaintiff's claims in the underlying suit was not waived by § 537.600. If Relator's sovereign immunity against Plaintiff's claims has been waived, it is because of § 537.610, RSMo 1994, which reads, in pertinent part:

   "1 .... the governing body of each political subdivision of this state ... may purchase liability insurance for tort claims, made against the ... political subdivision, but the maximum amount of such coverage shall not exceed one million dollars for all claims arising out of a single occurrence

"claims of malicious prosecution, false imprisonment and slander for the calendar year 1995," thereby waiving sovereign immunity "as provided by § 537.610 RSMo."

Respondent denied Relator's motion for summary judgment.

Relator thereupon filed a petition in this court for a writ of prohibition or, in the alternative, mandamus. Relator prayed this court to bar Respondent from allowing the underlying suit to proceed against Relator, and for this court to command Respondent to grant Relator's motion for summary judgment.

This court issued a preliminary order in prohibition barring Respondent from allowing the underlying suit to proceed against Relator until further order of this court.

Plaintiff thereafter filed an answer to Relator's petition,[1] and Relator and Plaintiff subsequently filed briefs.

■ The sole issue before this court, as framed by the briefs, is whether Relator's purchase of insurance waived Relator's sovereign immunity against Plaintiff's claims in the underlying suit. The answer to that question lies in § 537.610, RSMo 1994,[2] and Relator's insurance policy.

   and shall not exceed one hundred thousand dollars for any one person in a single ... occurrence ... and no amount in excess of the above limits shall be awarded or settled upon. Sovereign immunity for ... political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section ....
   2. ....
   3. No award for damages on any claim against a public entity within the scope of sections 537.600 to 537.650, shall include punitive or exemplary damages. ...."

   Section 537.610, RSMo 1994, was amended in 1999—four years after Plaintiff's alleged arrest. The amendments raised the amounts in subsection 1 and added some other provisions elsewhere in the statute. Except for the change in amounts, the subsections of § 537.610, RSMo 1994, quoted in this footnote were unchanged by the 1999 amendments.

The policy was issued by Savers Property & Casualty Insurance Company and bears number CP0000954–01. This opinion henceforth refers to the policy as "Policy 954." The period covered by Policy 954 was from "1–11–95" to "1–11–96."

This court gathers from the briefs that Relator and Plaintiff agree that the provisions of Policy 954 on which the outcome of this proceeding hinges are found in a part of Policy 954 denominated "Commercial General Liability Coverage Part." That part contains a segment denominated "Section I—Coverages." One of the components of Section I is denominated "Coverage B. Personal and Advertising Injury Liability." It reads, *inter alia:*

"1. Insuring Agreement.

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies...."

This opinion henceforth refers to the above-quoted passage as "Section I.B.1.a."

The term "personal injury" in Section I.B.1.a. is defined in another segment of the "Commercial General Liability Coverage Part" of Policy 954. That segment is denominated "Section V—Definitions." It reads, *inter alia:*

"....

13. 'Personal injury' means injury, other than 'bodily injury', arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. ...

   d. Oral or written publication of material that slanders or libels a person ... or disparages a person's ... goods, products or services[.]"

This opinion henceforth refers to the above-quoted passage as "Section V.13."

Obviously, Plaintiff's claims in the underlying suit are for "personal injury" as defined in Section V.13. If the analysis ended there, this would be an easy case; this court would summarily quash its preliminary order.

However, the analysis does not end with Section V.13. Whether Relator is entitled to relief in this court depends on whether Section I.B.1.a. of Policy 954, measured against § 537.610.1,[3] waives Relator's sovereign immunity against Plaintiff's claims.

The crucial language of Section I.B.1.a. is the clause obligating the insurer to pay "those sums that the insured becomes legally obligated to pay as damages" because of injuries defined in Section V.13. For ease of discussion, this opinion henceforth refers to that language as "the crucial policy language."

The crucial language of § 537.610.1 is the clause providing that sovereign immunity for political subdivisions is waived "only for the purposes covered by such policy of insurance." For ease of discussion, this opinion henceforth refers to that language as "the crucial statutory language."

In *State ex rel. Cass Medical Center v. Mason,* 796 S.W.2d 621 (Mo. banc 1990), a county hospital shielded by sovereign immunity against medical negligence claims was sued for medical negligence. *Id.* The suing party, relying on § 537.610.1, RSMo 1986,[4] maintained the hospital waived its immunity by purchasing a liability insurance policy. *Id.* at 623.

The Supreme Court of Missouri rejected the argument. The court examined the policy language to ascertain the "purposes covered." *Id.* That examination revealed the purposes covered did not include medical negligence. *Id.* The opinion explained:

"The insurance contract ... never promised coverage of the kind of claim made by [the suing party].... Because

---

**3.** Footnote 2, *supra.*

**4.** The crucial statutory language applicable in the instant case was carried forward unchanged from § 537.610.1, RSMo 1986.

[the] negligence claim does not fall under 'the purposes covered by [the] policy of insurance,' no coverage exists under this policy for the claim and no waiver of sovereign immunity exists under the language of section 537.610.1."

*Id.*

Accordingly, the Supreme Court in *Cass Medical Center* barred the trial court from allowing the suit to proceed against the hospital. *Id.* at 624.

Endeavoring to distinguish *Cass Medical Center* from the underlying suit, Plaintiff points out—and this court agrees—that in *Cass Medical Center* the hospital's insurance policy provided no coverage for the claim there (medical negligence) whereas Plaintiff's claims in the underlying suit fall within the definition in Section V.13 of Policy 954. Plaintiff insists: "[T]he purchase of insurance waives sovereign immunity if the insurance provides coverage for the very risks for which the defendant is being sued."

Plaintiff's argument, while superficially plausible, ignores the crucial policy language. The insurer's obligation under that language is to pay only the sums Relator becomes legally obligated to pay as damages because of injuries listed in Section V.13. If Relator never becomes legally obligated to pay damages for such injuries, no coverage exists under Section I.B.1.a., hence there is no waiver of sovereign immunity under § 537.610.1.

That was the analysis in *Balderree v. Beeman*, 837 S.W.2d 309 (Mo.App. S.D. 1992). There, a party sued a regional planning commission for slander. *Id.* at 311. This court held the commission was a public entity within the ambit of § 537.600 and thereby immune from slander liability unless it waived immunity pursuant to § 537.610.1 by purchasing insurance. *Id.* at 317.

The insurance in *Balderree*, like Policy 954, obligated the insurer to pay "those sums that the insured becomes legally obligated to pay as damages." *Id.* at 318. As the commission's sovereign immunity shielded it from liability for slander, the commission could never become legally obligated to pay damages therefor (unless, of course, the commission waived immunity). *Id.* at 319. Because nothing in the policy obligated the insurer to pay, on behalf of the commission, any sum *other than that which the commission became legally obligated to pay*, this court held the commission did not waive immunity against the slander claim when it bought the insurance. *Id.*

Plaintiff astutely observes that Policy 954 differs from the policy in *Balderree* in that the policy there did not list slander as a covered injury, whereas Section V.13 of Policy 954 specifically lists the types of claims for which Plaintiff seeks recovery in the underlying suit. Consequently, maintains Plaintiff, *Balderree* provides no support for Relator's argument that Relator did not waive sovereign immunity against Plaintiff's claims when Relator bought Policy 954.

In addressing Plaintiff's hypothesis, this court emphasizes the crucial policy language in Section I.B.1.a. requires the insurer to pay those sums that Relator *becomes legally obligated to pay as damages* because of injuries listed in Section V.13. It is clear from that language that unless Relator becomes legally obligated to pay such damages, the insurer has no duty to pay, as the condition triggering the insurer's obligation will not have occurred. Under the rationale of *Cass Medical Center*, 796 S.W.2d at 623, where the insurer has no obligation to pay, no coverage exists and no waiver of sovereign immunity occurs under § 537.610.1.

Said another way, this court holds the clear purpose of Section 1.B.1.a. is to provide insurance coverage for Relator only if Relator becomes legally obligated to pay damages for injuries listed in Section V.13. Under the crucial statutory language in § 537.610.1, Relator's sovereign immunity is waived only for the purposes covered by Policy 954. Because it was not the purpose of Policy 954 to waive Relator's immunity against claims such as Plaintiff's,

but only to provide insurance protection in the event Relator became legally obligated to pay damages because of such claims, this court holds there was no waiver by Relator under § 537.610.1 of Relator's immunity from such claims.

This court recognizes the above holding can be attacked by arguing that such a decision renders the coverage under Section I.B.1.a. of Policy 954 illusory. The argument would be that the insurer's duty to pay damages for injuries listed in Section V.13 will never arise because Relator will never become legally obligated to pay damages for such injuries.

Such an argument overlooks the possibility that in this dynamic (and litigious) society, circumstances could arise—possibly through legislative action or a change in the common law—whereby Relator would find itself legally obligated to pay such damages. That was the plight of the State Highway Commission in *Jones v. State Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977), and the dilemma of the defendants in the other three cases decided therewith. *Id.* at 226, 231.

Because of that specter, Relator's governing body apparently found it prudent for Relator to have insurance protection against such an eventuality. Were this court to hold Relator, by buying Policy 954, waived its sovereign immunity against Plaintiff's claims in the underlying suit, the holding could impel political subdivisions to drop such insurance, believing that by being uninsured they would retain their sovereign immunity. This court shall not create such a quandary.

Beyond that, however, there is another compelling reason that Relator, by buying Policy 954, did not waive its sovereign immunity against Plaintiff's claims in the underlying suit.

Attached to Policy 954 is an endorsement denominated "Missouri Municipal Amendatory Endorsement" ("the Endorsement"). The Endorsement provides, *inter alia:*

"This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

. . .

The purpose of this insurance does not include coverage for any liability or suit for damages which is barred by the doctrines of sovereign or governmental immunity by whatever name, as set forth in RS MO 537.600. *et.* [sic] *seq;*

This policy is not intended to act as a waiver, nor is it a waiver of any defense ... available to the Insured by statute or at common-law;

. . . .

All other terms and conditions remain unchanged."

In *State ex rel. Board of Trustees v. Russell,* 843 S.W.2d 353 (Mo. banc 1992), a city hospital bought insurance covering "claims that arise out of the two perils specifically described in Section 537.600 R.S.Mo." *Id.* at 360. Those are the perils as to which sovereign immunity is waived by § 537.600.1.

The policy in *Russell* contained an endorsement expressly disclaiming coverage for any claim barred by the doctrine of sovereign immunity. *Id.* The endorsement also provided that nothing contained in the policy or the endorsement shall constitute any waiver of the defense of sovereign immunity. *Id.*

The Supreme Court of Missouri held the hospital in *Russell,* by buying the insurance, did not waive sovereign immunity under § 537.610.1 against a claim for medical malpractice. *Id.* at 354, 360[13].

*Russell* was followed in *Casey v. Chung,* 989 S.W.2d 592 (Mo.App. E.D.1999). There, a county hospital purchased liability insurance covering bodily injury claims arising from health care services provided by it. *Id.* at 593. Attached to the policy was an endorsement stating the insurance did not apply to any claim or suit barred by sovereign immunity. *Id.* The endorsement also stated that neither it nor the policy shall constitute a waiver of the defense of sovereign immunity. *Id.* The ap-

pellate court held the hospital, by buying the insurance, did not waive sovereign immunity under § 537.610.1 against medical malpractice claims. *Id.* at 593–94.

■ Liability of a political subdivision for torts is the exception to the general rule of sovereign immunity, hence it is incumbent on a party seeking to establish such liability to demonstrate an exception exists. *Best v. Schoemehl,* 652 S.W.2d 740, 743[4] (Mo.App. E.D.1983), citing *Burke v. City of St. Louis,* 349 S.W.2d 930 (Mo. 1961). Plaintiff has demonstrated no exception here.

Applying *Russell,* 843 S.W.2d at 360[13], and *Casey,* 989 S.W.2d at 593–94, this court holds the Endorsement to Policy 954 unassailably establishes that Relator, by buying Policy 954, did not waive sovereign immunity under § 537.610.1 against Plaintiff's claims in the underlying suit.

■ Prohibition is an appropriate remedy to protect a party from patently unwarranted and expensive litigation. *Cass Medical Center,* 796 S.W.2d at 624. Because Relator is immune from Plaintiff's claims in the underlying suit, this court holds Relator is entitled to the relief it seeks.

### Order

Pursuant to Rule 84.24(*l*), Missouri Rules of Civil Procedure (2000), this court orders that a peremptory writ in prohibition be issued commanding Respondent to bar Plaintiff from proceeding against Relator in the underlying suit and to grant Relator's motion for summary judgment. Said writ shall not impede Plaintiff from proceeding against the other defendants.

PARRISH, J., concurs.

SHRUM, J., concurs in result and files concurrence.

SHRUM, Judge, concurring.

I concur in the result. I do so because of "the Endorsement" attached to Policy 954 and the analysis of the Endorsement made by the majority, including its reliance on *State ex rel. Board of Trustees v.* *Russell,* 843 S.W.2d 353 (Mo.banc 1992), and *Casey v. Chung,* 989 S.W.2d 592 (Mo. App.1999). I write separately because of my disagreement with the rest of the majority opinion.

Unlike the Relator here, the political subdivisions in *State ex rel. Cass Medical Center v. Mason,* 796 S.W.2d 621 (Mo.banc 1990), and in *Balderree v. Beeman,* 837 S.W.2d 309 (Mo.App.1992), had not purchased liability insurance coverage for the very risks for which the respective public bodies were being sued. I view that as a definitive and dispositive distinction. I do not agree that *Cass* and *Balderree* support the implicit holding of the majority that Relator would retain immunity from the plaintiff's claims after buying Policy 954 without the Endorsement. By reading the plain language of § 537.610.1, RSMo 1994, I conclude that, but for the Endorsement, Relator's purchase of insurance protection against claims of the type asserted by plaintiff was a waiver of Relator's immunity from such claims. Any other interpretation renders the coverage illusory under Section 1.B.1.a. of Policy 954.

In so stating, I do not ignore the majority's attempt to explain away the "illusory coverage" argument. However, I find nothing in the record to support the notion that Relator bought Policy 954 merely to protect itself against potential legislative or common law changes in Relator's sovereign immunity status. To the contrary, Relator's presiding commissioner testified as follows:

"Q. Is there any reason to believe that in purchasing this policy which included [the] part we just read together, that those three claims [of] malicious prosecution, false imprisonment, and slander weren't covered?

. . . .

"A. As it reads, no."

Further, Mark Simpson, who testified on behalf of the agency that sold Policy 954, testified as follows:

"Q. Is false imprisonment one of the risks covered by Coverage B of this insurance policy?

. . . .

"A. [By Simpson] I believe the false imprisonment is within the coverage of Coverage B. . . .

"Q. And is malicious prosecution also within that coverage?

. . . .

"A. Yes.

. . . .

"Q. And is slander also within that coverage?

. . . .

"A. Yes."

I cannot conclude from this nor from anything else in the record, as the majority apparently does, that Relator bought Policy 954 only to protect itself from claims of this type that are asserted after Relator loses its immunity due to legislative enactments or changes in the common law. The record suggests otherwise. I would issue the peremptory writ in prohibition based on "the Endorsement" analysis and nothing more.