Laura Denvir Stith, Judge
The State appeals the trial court’s holding that the right to bear arms set out in article I,-section 23 of the Missouri Constitution is violated by section 571.070.1,[1] which prohibits nonviolent felons from possessing firearms. The trial court based its ruling on the adoption of Amendment 5 in August 2014, which added language to article I, section 23 requiring; inter alia, strict scrutiny of laws restricting the right to bear arms as set out in section 23 and further declaring that “nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the right of convicted violent felons [to bear arms]The trial court erred in construing this language to bar the legislature from adopting laws regulating the possession of arms by nonviolent felons.
The legislature has the authority to adopt laws, except when expressly prohibited by the constitution, and section 23 is *533 silent as to the right of nonviolent felons to possess firearms. The explicit statement in section 23 that laws regulating the right to bear arms are subject to strict scrutiny has no impact on this ruling because, as this Court recently noted in State v. Merritt, 467 S.W.3d 808 (Mo. banc 2015); State v. McCoy, 468 S.W.3d 892 (Mo. banc 2015); and Dotson v. Kander, 464 S.W.3d 190 (Mo. banc 2015), it "always has applied strict scrutiny to laws regulating the right to bear arms. The circuit court’s judgment is reversed, and the case is remanded.

I. FACTUAL AND- PROCEDURAL HISTORY

Pierre Clay was stopped on January 26, 2015, for a traffic violation and found to possess a revolver. Police ran his record and arrested him after discovering he had a prior felony conviction. On February 25, 2015, Mr. Clay was charged by information with possession of marijuana in violation of section 195.202 and with unlawful possession of a firearm in violation of section 571.070.1(1). Section 571.070.1 prohibits persons previously convicted of a felony from possessing firearms, stating:
A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and ... [sjuch person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony[.]

§ 571.070.1(1).

Mr. Clay does not deny that he comes within the scope of section 571.070.1 because he is a prior offender, having been convicted previously of the nonviolent felony of unlawful use of a weapon. But he moved to dismiss the unlawful possession charge, claiming that article I, section 23 of the Missouri Constitution prohibits the legislature from criminalizing his possession of a firearm. The trial court agreed and dismissed the, firearms possession count prior to issuance of this Court’s opinions in Merritt, 467 S.W.3d 808, and McCoy, 468 S.W.3d 892. The State appeals. Because this appeal involves the validity of a state, statute, this Court has exclusive appellate jurisdiction pursuant to article V, section 3 of the Missouri Constitution.

II. STANDARD OF REVIEW

Rule 24.04(b)(1) permits a criminal defendant to raise “[a]ny defense or objection which is capable of determination without trial of the general issue ... before trial by motion.” “Whether a statute is constitutional" is reviewed de novo; Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision.” State v. Vaughn, 366 S.W.3d 513, 517 (Mo. banc 2012) (internal citations omitted).

Ill ARTICLE I, SECTION 28, AS AMENDED, DOES NOT BAR REGULATION OF FIREARMS BY NONVIOLENT FELONS

Mr. Clay claims that article I, section 23, as amended in August 2014, bars the legis.-lature from regulating the possession of firearms by nonviolent felons. This Court disagrees.- The people of Missouri adopted Amendment 5 on August 5, 2014. Prior to that amendment, article I, section 23 of the Missouri Constitution stated:
That the right "of every citizen to keep and bear arms, in defense of his home, person, and property, or when lawfully summoned in aid of the civil power, shall not be questioned; but this shall not justify the wearing of-concealed weapons.
*534 Id. Following the adoption of Amendment 5, article I, section 23 states:
That the right of every citizen to keep and bear arms ammunition, and accessories typical to the normal function of such arms, in defense of his home, person, family and property, or when lawfully summoned in aid of the civil power, shall not be questioned; but this shall not justify the wearing of.concealed weapons. The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent .the general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as result of a mental disorder or mental inñrmity.
Art. I, sec. 23 (new language in bold italics, deleted language struck through).

A. The Pre-Amendment 5 Version of Article I, Section 23 Permitted Regulation of Firearms’Possession by Felons

This Court recently interpreted article I, section 23 in two cases: Merritt, 467 S.W.3d 808, and McCoy, 468 S.W.3d 892, The defendants in both' of those cases argued, as Mr. Clay argues here, that in authorizing the legislature to regu-íate the possession of firearms by violent felons, Amendment 5 must be read to prohibit the legislature from regulating the possession of firearms by nonviolent felons. This Court did, not-reach that issue in Merritt or McCoy because the crimes with which the defendants in those cases were charged occurred before the adoption of Amendment 5. This Court rejected those defendants’ argument that Amendment 5 applied retroactively and held that, to the contrary, the legislature’s authority to regulate firearms must be determined under the version of article I, section 23 that was in effect at the time of their crimes. Merritt, 467 S.W.3d at 810, 812; McCoy, 468 S.W.3d at 893-95.[2]
In both Merritt and McCoy, this Court further held that because cases such as District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and McDonald v. City of Chicago, Illinois, 561 U.S. 742, 791, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), have recognized that the right to bear arms is a fundamental right, strict scrutiny must be used in analyzing the constitutionality of any regulation of that right. Merritt, 467 S.W.3d at 812-13; McCoy, 468 S.W.3d at 895-96.[3] These cases also recognize that strict scrutiny is not a monolithic concept. Rather, “the application of strict scrutiny depends on context, including the controlling facts, the reasons advanced by the government, relevant differences, and the fundamental right involved.” Merritt, 467 S.W.3d at *535 813; McCoy 468 S.W.3d at 897. Or, as Justice O’Connor noted in Grutter v. Bollinger, 539 U.S. 306, 327, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003), “Context matters ... strict scrutiny is designed to provide a framework for carefully examining the importance and the sincerity of the reasons advanced by the governmental decision maker.... ”
While most commonly courts apply strict scrutiny by determining whether a law was narrowly tailored to achieve a compelling state interest, in other cases, depending on the extent the regulation burdens a particular right, the courts look to whether a regulation imposes “reasonable, non-discriminatory restrictions” that serve “the State’s important regulatory interests” or whether the encroachment is “significant.”[4] Similarly, Heller looked at the nature of the regulation and the degree of infringement it imposed on the second amendment. 554 U.S. at 628-29, 128 S.Ct. 2783. Heller found the absolute handgun ban in the case before it was a “severe restriction” that would be unconstitutional “[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights[.]”- Id.
Most important here, while Heller declined to'expressly determine which scrutiny level and test applied, it stated that whatever the level, its ruling “did not east doubt on such longstanding prohibitions on the possession of firearms by felons and the mentally ill.” Heller, 554 U.S. at 626-27, 128 S.Ct. 2783; accord, McDonald, 561 U.S. at 786,130 S.Ct. 3020.
While, unlike Heller and McDonald, Merritt and McCoy explicitly did apply strict scrutiny, they similarly held that it was unnecessary for 'them to determine which strict scrutiny test applies to the right to bear arms because section 571.070.1’s restriction on the possession of weapons by felons survives even the most stringent formulation of the strict scrutiny-standard in that it is narrowly tailored to achieve a compelling state interest. Merritt, 467 S.W.3d at 814; McCoy, 468 S.W.3d at 897. The State has a compelling governmental interest in “ensuring public safety and reducing firearm-related crime .-.. [and] [prohibiting felons from possessing firearms is narrowly tailored' to *536 that interest because ‘[i]t .is well-established that felons, are more, likely to commit violent crimes than are other law abiding citizens.’ ” Merritt, Id. at 814, citing United States v. Barton, 633 F.3d 168, 175 (3d Cir.2011). Further, this Court .already has held that restrictions on the right of felons to possess arms has long been recognized as an exception to the right to bear arms, and section 571.070.1 is narrowly tailored in that it does not apply to misdemeanors, felony convictions that have been pardoned, or possession' of antique firearms. Id. at 815-16.[5]

B. Amendment 5 did not Substantially Change the Right to Bear Anns

Mr. Clay- argues that the analysis in Merritt and McCoy does not apply here because the adoption of Amendment 5 worked a substantial change in article I, section 23 and that section how bars, any regulation of the right of nonviolent felons to possess firearms. This Court already rejected this argument in Dotson, 464 S.W.3d 190. The plaintiffs in Dotson argued that the ballot title for Amendment 5 was legally insufficient because it omitted any description of the language being added to the constitution concerning strict scrutiny, possession of ammunition and equipment, and ‘ other language and because it did -not inform the voter that the amendment substantially changed the laws regulating the right to bear arms.[6] Dotson, 464 S.W.3d at 196-97.
Dotson rejected this argument precisely because it found that Amendment 5 did not substantially change article I, section 23 but rather 'simply set out “a declaration of the law as it would have been declared by this Court.after McDonald mandated that the fundamental right to bear arms applied to the states.” Id. at 192—93,. 197, n. 5, , While the ballot title did not detail all .of the additions to and deletions from article I, section 23, this Court found these details, were not central, features of the constitutional amendment and the language in Amendment 5 did not mislead voters into thinking they were adding a new right to the Constitution. The amendment, rather, was an expression or declaration of existing rights;, it simply enshrined the status quo as to the right to bear arms.[7]
*537 Mr. Clay asks this Court to overrule Dotson and decide that Amendment 5 did work a substantial change in article I, section 23, At argument, Mr. Clay and Amicus Freedom Center of Missouri argued that the addition of language explicitly giving the legislature the authority to regulate the possession of arms by violent felons and by those with a mental disorder or infirmity meant that it could not regulate the possession of arms by other felons.
Article I, section 23 does not support this argument. It would have been simple for the people to include language in Amendment 5 prohibiting the legislature from regulating possession of firearms by nonviolent felons. The amendment could, for instance, have said, “The legislature is prohibited from regulating the. possession of firearms by nonviolent felons” or “The legislature may regulate the possession of firearms by violent felons and those adjudicated to have certain mental disorders but may not regulate the possession of firearms by others.” But, it did not. The amendment did not address nonviolent felons specifically in article I, section 23.
The only specific groups of citizens addressed by Amendment 5 are those who are “convicted violent felons or those adjudicated by a court to be a danger to self or others as a result of a mental disorder or mental infirmity.” Amendment 5 makes explicit that the clarification of the application of strict scrutiny and the - other changes adopted cannot be construed to prohibit regulation of arms by such persons. The amendment simply is silent as to others. This does not mean that regulation of the possession of arms by others is not permitted. Were that the case, the amendment would have been very short indeed and would not have needed to address the level of scrutiny to be applied to regulations of the right to bear arms, for there .could be no such regulation. Instead, Amendment 5 sets out the. standard of scrutiny for regulation of arms possessed by persons other than convicted violent felons and persons with certain mental disorders or infirmities—such regulations maybe adopted but will be subject to strict scrutiny.
This analysis follows not only from the language used in article I, section .23 as amended by Amendment 5 but also from general principles of constitutional construction.
[T]he Constitution is not a grant' but a restriction upon the powers of the legislature. Consequently, the General As-semblyhas the power to do whatéVer is necessary to perform its functions except as expréssly restrained by the Constitution. Deference due the General Assembly requires that doubt be resolved against nullifying its action if it is possible to do so by any reasonable construction of that action or by any reasonable construction of the Constitution.
Liberty Oil Co. v. Dir. of Revenue, 813 S.W.2d 296, 297 (Mo. banc 1991) (internal citations omitted) (emphasis added).
This Court reached a similar result in analyzing the previous version of article I, section 23 in Brooks v. State, 128 S.W.3d 844, 847-48 (Mo. banc 2004). At issue in Brooks was whether an act adopted by the legislature authorizing the wearing of concealed weapons violated the portion of the previous version of article- I, section 23, which stated that Missourians have the right to bear arms but “this shall not justify the wearing.of concealed weapons.” This Court held that this section did not *538 contain a “constitutional prohibition against the wearing of concealed weapons; there is only a prohibition against invoking the right'to keep and bear arms to justify the wearing of concealed weapons.” Brooks, 128 S.W.3d at 847. In other words, article I, section 23 did not itself authorize a person to carry a concealed weapon, but that did not prohibit the legislature from authorizing the public to do so. This meant that “the General Assembly, which has the plenary power to enact legislation on any subject in the absence of a constitutional prohibition, has the final say in the use and regulation of concealed weapons!.]” Id. (internal citations omitted). . , .
Similarly, here, Amendment 5 did not bar the General Assembly from adopting laws regulating possession of firearms by nonviolent felons. It does state that such laws are subject to strict scrutiny. “That strict scrutiny applies ‘says nothing about the ultimate validity of any particular law; that determination is the job of the court applying’ the standard.” Dotson, 464 S.W.3d at 197, citing Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 115 S.Ct. 2097,132 L.Ed.2d 158, (1995).
This Court already has subjected section 571.070.1 to strict scrutiny ill Merritt and McCoy and found that section 571.070.1 is narrowly tailored to serve a compelling government interest in protection of the public. This Court already has determined in Dotson that Amendment 5 worked no substantial change' in article I, section 23. This Court here has clarified that the specific grant of authority in Amendment 5 to adopt laws regulating the possession of firearms by convicted violent felons does not affect the right of the legislature to adopt laws regulating the right of others to possess firearms where, as here, those laws pass strict scrutiny.[8] Accordingly, section 571.070.1 is a constitutional restriction of a convicted nonviolent felon’s right to bear arms.

IV. CONCLUSION

Missouri’s constitution does not prohibit the' legislature from restricting nonviolent felons’ right to possess firearms. Section 571.070.1 survived strict scrutiny review under the prior version of article I, section 23, and this Court already has held that Amendment 5 did not substantially change article I, section 23. The statutory bar is valid. The circuit court’s judgment is reversed, and the case is remanded.
Breckenridge, C.J., Fischer, Wilson and Russell, JJ., concur; Teitelman, J., dissents in separate opinion filed; Draper, J., concurs in opinion of Teiteman, J.

. Statutory citations are to RSMo Súpp. 2013 except where otherwise indicated.

. “The settled rule of construction in this state, applicable alike to the Constitutional and statutory provisions, is that, unless a different intent is evident beyond reasonable question, they are to be construed as having a prospective' operation only,”. Merritt, 467 S.W.3d at 812 (internal citations omitted). As Amendment 5 does not spell out a clear and explicit intent to apply retroactively, the amendment applies prospectively only.- Mer ritt, 467 S.W.3d at 812; McCoy, 468 S.W.3d at 895.

. By contrast, the ■ United States Supreme Court in Heller and McDonald recognized that the right to bear arms is fundamental, but declined to identify the appropriate level of scrutiny of laws regulating the right to bear arms. See, e.g., Heller, 554 U.S, 570, 128 S.Ct. 2783, 171 L.Ed.2d 637; McDonald, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894.

. See, e.g., Johnson v. California, 543 U.S. 499, 505, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005) (racial classifications must be “narrowly tailored measures that further compelling government interests”); Dunn v. Blumstein, 405 U.S. 330, 342, 353, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (durational residence laws must be “necessary to promote a compelling governmental interest”); and Kramer v. Union Free Sch. Dist. No. 15, 395 U.S. 621, 627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) ("[I]f a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest.”). Compare these statements of the test with Burdick v. Takushi, 504 U.S. 428, 434, 112 .S.Ct. 2059, 119 L.Ed.2d 245 (1992), which heid that "reasonable, nondiscriminatory restrictions” on the rights of voters are justified if “the State’s important regulatory interests are generally sufficient to justify the restriction.” (internal quotation omitted). See also Griswold v. Connecticut, 381 U.S. 479, 504, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (White, J concurring) (“Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating. interest which is compelling. But, such statutes, if reasonably necessary for the effectuation of a legitimate and. substantial state interest, and not arbitrary or capricious in application, are not invalid, under the Due Process Clause.”) (internal citations omitted). See also Grutter, 539 U.S. at 326-21, 123 S.Ct. 2325 and Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 237, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (strict scrutiny is not “strict in theory, but fatal in fact.”); Adam Winkler, Fatal in Theory and Strict .in Pact: An Empirical Analysis of Strict Scrutiny in the Federal Courts, 59 Vand. L. Rev! 793, 808 (2006).

. This Court rejects any suggestion-that for the law to survive strict scrutiny this Court must' in each case de novo reconsider and itself evaluate the strength of studies about the use of weapons by felons before it can . determine whether restrictions on the right of ■ felons to bear arms are sufficiently narrowly tailored. This Court very recently held that the law in question is narrowly tailored and is consistent with this country's tradition of limiting weapons in the hand of felons. No new evidence or changed law has been identified that calls for reevaluation of that determination.

. The ballot title asked voters, "[S]hall the Missouri Constitution be amended to include a declaration that the right to keep and bear arms is a [sic] unalienable right and that the state government is obligated to uphold that right?” Dotson, 464 S.W.3d at 196.

.For instance, Dotson held, over vigorous separate opinions addressing these very is- ■ sues—see 464 S,W.3d at 215-21 (Teitelman, J., dissenting); id. at 205-10 (Stith, J., concurring)—that the deletion of language regarding concealed weapons did not change the legislature's authority to regulate concealed . weapons that existed -prior to the amendment and that the addition of -the right to ammunition and accessories was not so material that its omission from the ballot title made it unfair or insufficient. Id. at 196-99. This Court further stated:
[T]he fact that this right [to bear arms] is "fundamental” from a legal perspective does not mean that it is improper for the voters to add a declaration that the right is "unalienable.” Similarly, the fact, that the state always has had the obligation to uphold and protect this right together with the rest of the constitution does not mean it is *537 improper for the voters to add a declaration that this is so.
Dotson, 464 S.W.3d at 200.

. Mr. Clay argues that article I, section 23 now requires a "robust” strict scrutiny review of any restriction on the right to bear arms because the word "unalienable” was added to the constitution. But the concept of inalienability is distinct from strict scrutiny review. No one suggests that the right to bear arms is alienable. The question here is whether preventing nonviolent felons from possessing firearms violates the inalienable right. Mr. Clay cites no case requiring a more robust review of. the right to bear arms because it is inalienable, and in any event, there is no more robust test than strict scrutiny.