Standard of Review
The constitutional validity of a statute is a question of law this Court reviews de novo. Planned Parenthood , 220 S.W.3d at 737. This Court will presume the statute is valid and will not declare a statute unconstitutional unless it clearly contravenes some constitutional provision. Id. Alpert's petition challenged section 571.070 's validity under both the Missouri and United States constitutions.
*596 Article I, Section 23 Challenge
Article I, section 23 of the Missouri Constitution provides:
That the right of every citizen to keep and bear arms, ammunition, and accessories typical to the normal function of such arms, in defense of his home, person, family and property, or when lawfully summoned in aid of the civil power, shall not be questioned. The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as result of a mental disorder or mental infirmity.
Alpert's petition alleged section 571.070 as applied to him violated article I, section 23 because section 571.070 is not narrowly tailored to achieve any compelling state interest.[7] Alpert's petition asserted several ways section 571.070 is not narrowly tailored, in that: it is not restricted to violent or dangerous offenders, but applies to all felons; there is no temporal limit to its applicability; it applies to persons such as Alpert who have demonstrated an ability to possess firearms peaceably and without incident since their convictions; it applies to disabled felons who may need to possess a firearm for self-defense; it applies to felons whose right to possess firearms was restored under 18 U.S.C. § 925(c) ; the prohibition on nonviolent felons possessing firearms is not longstanding; it is not restricted to persons who have been adjudicated by a state agency or court to be a danger to themselves or others; it restricts all possession by felons, even types of possession posing no risk to safety; it is underinclusive; and the legislature did not consult or rely upon any research, studies, or other data to support the broad prohibition it was adopting.
"The legislature has the authority to adopt laws, except when expressly prohibited by the constitution and section 23 is silent as to the right of nonviolent felons to possess firearms." State v. Clay , 481 S.W.3d 531, 532-33 (Mo. banc 2016). Clay recognized this Court always has applied strict scrutiny to laws regulating the right to bear arms, citing State v. Merritt , 467 S.W.3d 808 (Mo. banc 2015), State v. McCoy , 468 S.W.3d 892 (Mo. banc 2015), and Dotson v. Kander , 464 S.W.3d 190 (Mo. banc 2015). Id. at 533. In upholding section 571.070 as a constitutional restriction against a convicted nonviolent felon's right to bear arms, Clay explained:
This Court already has subjected section 571.070.1 to strict scrutiny in Merritt and McCoy and found that section 571.070.1 is narrowly tailored to serve a compelling government interest in protection of the public. This Court already has determined in Dotson that Amendment 5 worked no substantial change in article I, section 23. This Court here has clarified that the specific grant of authority in Amendment 5 to adopt laws regulating the possession of firearms by convicted violent felons does not affect the right of the legislature to adopt laws regulating the right of others to possess firearms where, as here, those laws pass strict scrutiny. Accordingly, section *597 571.070.1 is a constitutional restriction of a convicted nonviolent felon's right to bear arms.
Id. at 538 (footnote omitted). This Court further clarified:
This Court rejects any suggestion that for the law to survive strict scrutiny this Court must in each case de novo reconsider and itself evaluate the strength of studies about the use of weapons by felons before it can determine whether restrictions on the right of felons to bear arms are sufficiently narrowly tailored. This Court very recently held that the law in question is narrowly tailored and is consistent with this country's tradition of limiting weapons in the hand of felons. No new evidence or changed law has been identified that calls for reevaluation of that determination.
Id. at 536 n.5.
Alpert repackages many of the arguments this Court addressed and rejected in Merritt , McCoy , and Clay . First, this Court recognized the prohibition on felons possessing firearms was longstanding. Clay , 481 S.W.3d at 535-36 ; see also United States v. Bena , 664 F.3d 1180, 1182-84 (8th Cir. 2011) (providing an extensive discussion of the longstanding prohibition of felons possessing firearms under the common law, federal statutes, and the Second Amendment). This Court explicitly held section 571.070 was narrowly tailored despite not being restricted to violent or dangerous offenders, having no temporal limit, and restricting possession by all felons, even types of possession posing no safety risk. McCoy , 468 S.W.3d at 898-99 ; Merritt , 467 S.W.3d at 815-16. This Court rejected the notion section 571.070 prohibited self-defense. McCoy , 468 S.W.3d at 899 ; Merritt , 467 S.W.3d at 816. This Court also declined to find section 571.070 required procedural safeguards for judicial review to determine whether the felon posed an actual danger to the public by possessing a firearm to pass constitutional muster. McCoy , 468 S.W.3d at 899. This Court held section 571.070 was not underinclusive because it did not apply to misdemeanants and other offenders likely to commit violent offenses. McCoy , 468 S.W.3d at 899.[8] Finally, this Court recognized "statistics do not bear on the constitutional analysis [of section 571.070 's validity] because they prove nothing about the law's design." Merritt , 467 S.W.3d at 814 n.6.
As for Alpert's other claims, such as his restoration of federal rights, his demonstrated ability to possess firearms peaceably, and the lack of restriction for those persons who have been adjudicated by a state agency or court to be a danger to themselves or others, "narrow tailoring 'does not require exhaustion of every conceivable ... alternative.' " Merritt , 467 S.W.3d at 815 (quoting Grutter v. Bollinger , 539 U.S. 306, 339, 123 S.Ct. 2325, 156 L.Ed. 2d 304 (2003) ). This Court noted the contrast between the federal felon-in-possession law, 18 U.S.C. § 922(g)(9) (2006), and section 571.070. McCoy , 468 S.W.3d at 899. Likewise, Missouri has no mechanism for the restoration of rights absent a pardon or expungement, neither of which Alpert has obtained. Id. Hence, when subjected to strict scrutiny under article I, section 23, section 571.070 is valid. Clay , 481 S.W.3d at 538.
Second Amendment Challenge
Alpert's petition raises identical arguments to support his claim *598 section 571.070 as applied to him violates his Second Amendment rights, again alleging the statute cannot withstand strict scrutiny because it is not narrowly tailored to achieve a compelling state interest. This Court has not yet declared a level of scrutiny to apply to Second Amendment challenges. Merritt , 467 S.W.3d at 813, n.5 ; McCoy , 468 S.W.3d at 896 n.4.
In District of Columbia v. Heller , 554 U.S. 570, 595, 128 S.Ct. 2783, 2799, 171 L.Ed. 2d 637 (2008), the United States Supreme Court held the Second Amendment conferred an individual right to keep and bear arms for lawful purposes, such as self-defense. Heller declined to establish a level of scrutiny when it evaluated the Second Amendment restriction. Id. at 634, 128 S.Ct. 2783, 2799. In a footnote, the Supreme Court stated judicial review required something more than "rational basis" because "[i]f all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." Id. at 629 n.27, 128 S.Ct. 2783. Heller found the right to keep and bear arms is not unlimited and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626, 128 S.Ct. 2783. Heller was careful to point out "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places." Id. at 626-27, 128 S.Ct. 2783, 2799. The Supreme Court went on to identify prohibitions against felons possessing firearms as "presumptively lawful regulatory measures." Id. at n.26.
Two years after Heller , the Supreme Court extended the Second Amendment's application to the states by virtue of the Fourteenth Amendment's Due Process Clause. McDonald v. City of Chicago, Ill. , 561 U.S. 742, 791, 130 S.Ct. 3020, 3050, 177 L.Ed. 2d 894 (2010). The Supreme Court again judiciously avoided naming or applying a particular level of scrutiny when reviewing this fundamental right. Id. at 782-84, 130 S.Ct. 3020, 3050.
In Clay , this Court reiterated both Merritt and McCoy held that because cases such as Heller and McDonald recognized the right to bear arms is a fundamental right, strict scrutiny must be used in analyzing the constitutional validity of any regulation of that right under Missouri law. Clay , 481 S.W.3d at 534 ; Merritt , 467 S.W.3d at 812-13 ; McCoy , 468 S.W.3d at 895-96. However, Clay still did not reach the issue of how to analyze Second Amendment challenges because one was not raised in that case.
Alpert contends strict scrutiny is appropriate yet he relies on cases from other jurisdictions that apply a lesser level of scrutiny when analyzing Second Amendment challenges to support his claim. First, Alpert relies heavily on United States v. Barton , 633 F.3d 168 (3rd Cir. 2011), and the factors it analyzed to demonstrate section 571.070 violates the Second Amendment as applied to him. In Barton , the Third Circuit explained:
To raise a successful as-applied challenge, [the challenger] must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society.
*599 Barton , 633 F.3d at 174.[9] Barton ultimately denied the challenger relief because "he has presented no facts distinguishing his circumstances from those of other felons who are categorically unprotected by the Second Amendment." Id. at 175.
Barton was overruled in part by another case Alpert relies upon, Binderup v. Attorney General United States of America , 836 F.3d 336 (3rd Cir. 2016), a fractured decision analyzing as-applied challenges to the Second Amendment. In Binderup , two men with state misdemeanor convictions were prohibited from possessing firearms under federal law and argued the law was unconstitutional as applied in violation of the Second Amendment. Id. at 340. The court explained it adopted a two-pronged approach for deciding as-applied challenges in United States v. Marzzarella , 614 F.3d 85 (3rd Cir. 2010). The court must consider "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Id. at 89. If not, the challenged law stands. Id. If the challenged law burdens protected conduct, the court subjects the law to intermediate scrutiny. Id. After discussing Barton 's holding, Binderup synthesized Marzzarella and Barton as follows:
Read together, Marzzarella and Barton lay out a framework for deciding as-applied challenges to gun regulations. At step one of the Marzzarella decision tree, a challenger must prove, per Barton , that a presumptively lawful regulation burdens his Second Amendment rights. This requires a challenger to clear two hurdles: he must (1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member, and then (2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class.
Binderup , 836 F.3d at 346-47 (internal citations omitted).
When applying this framework, the court explicitly overruled Barton to the extent it suggested "people who commit serious crimes retain or regain their Second Amendment rights if they are not likely to commit a violent crime" as part of the step one analysis. Id. at 349. The court noted Heller recognized "longstanding prohibitions on the possession of firearms by felons," not just violent felons. Id. at 348. Hence, this category included "any person who has committed a serious criminal offense, violent or nonviolent." Id. The court also rejected Barton 's holding "that the passage of time or evidence of rehabilitation will restore the Second Amendment rights of people who committed serious crimes." Id. at 349. "A challenger's risk of violent recidivism tells us nothing about whether he was convicted of a serious crime, and the seriousness of the purportedly disqualifying offense is our sole focus throughout Marzzarella 's first step." Id. at 350.
The Binderup court determined, under the first step, the challengers demonstrated their crimes were not serious enough to strip them of their Second Amendment rights because they distinguished their circumstances from those historically excluded from the right to bear arms. Id. at 353. When moving to the second step and applying intermediate scrutiny, the court recognized the Barton factors were relevant *600 to determine whether there is a substantial governmental interest in disarming those who fall within Second Amendment protections. Id. at 354 n.7. After examining those factors, the court found the federal law was unconstitutional as applied to the challengers because "isolated, decades-old, non-violent misdemeanors do not permit the inference that disarming people like them will promote the responsible use of firearms" and there was no evidence demonstrating "why people like them remain potentially irresponsible after many years of apparently responsible behavior." Id. at 356. The court determined that, without more, there was not a substantial fit between prohibiting their possession of firearms and an important government interest. Id.
Alpert argues Binderup fully supports his claim, especially when comparing the offenses committed by himself and the challengers and applying the Barton factors. Assuming arguendo this Court adopted the two-step framework in Binderup , Alpert's claim would fail. Unlike the Binderup challengers, Alpert falls into the category of serious offenders traditionally prohibited from possessing firearms under Marzzarella 's first step. Although Alpert characterizes his offenses as "minor drug crimes at a time when most offenders like him would receive probation," he downplays the fact he received both state and federal felony drug convictions, requiring him to serve prison time. This contrasts with the Binderup challengers, both of whom were state misdemeanants, not sentenced to jail time, and whose crimes were considered non-serious in several jurisdictions. Binderup , 836 F.3d at 352-53. Binderup noted it was not presented with an instance in which the disqualifying offense was considered a felony by the authority that created the crime, but stated, "it is possible to read Heller to leave open the possibility, however remote, of a successful as-applied challenge by someone convicted of such an offense. At the same time, even if that were so, the individual's burden would be extraordinarily high-and perhaps even insurmountable." Id. at 353 n.6. Hence, Alpert's claim cannot prevail under Binderup or Barton .[10]
Finally, Alpert alleges this Court's precedent does not bar his Second Amendment challenge for three reasons. First, Alpert claims his challenge is based on a more rigorous form of strict scrutiny than applied in prior challenges. However, as this Court stated in Clay , "section 571.070.1's restriction on the possession of weapons by felons survives even the most stringent formulation of the strict scrutiny standard in that it is narrowly tailored to achieve a compelling state interest." Clay , 481 S.W.3d at 535. Alpert has not cited any case in which a Second Amendment claim was subject to a "stringent formulation of the strict scrutiny standard" and the challenger prevailed. Second, Alpert contends he substantiated his claim with ample, uncontradicted evidence regarding personal details of his life to demonstrate he posed no risk to public safety. This Court has not adopted such a test as articulated in Binderup , and even if this Court chose to do so, *601 as discussed previously, Alpert cannot prevail. Lastly, Alpert claims his case is distinguishable from Merritt , McCoy , and Clay , because their felonies were less remote in time, they did not have their federal gun rights restored, and they presented no evidence about their potential threat to public safety. However, Alpert disregards the common denominator that ties his case to the others: he committed two serious felonies requiring him to serve prison time. Alpert fails to demonstrate section 571.070 violates the Second Amendment as applied to him.
Conclusion
The circuit court's judgment is affirmed.
Russell, Breckenridge and Stith, JJ., concur;
Fischer, C.J., dissents in separate opinion filed;
Wilson, J., dissents in separate opinion filed;
Powell, J., concurs in opinion of Wilson, J.

Alpert conceded in the circuit court his facial challenges under article I, section 23 and the Second Amendment failed because there were circumstances under which section 571.070 can be applied constitutionally.

Alpert's argument on appeal that section 571.070 is underinclusive because it treats similarly situated felons in a disparate fashion was not presented in his petition and will not be addressed here.

The Eighth Circuit acknowledged these factors as potentially relevant to a Second Amendment as-applied challenge, but it has yet to grant relief when applying them. See United States v. Woolsey , 759 F.3d 905, 909 (8th Cir. 2014) ; United States v. Siegrist , 595 Fed.Appx. 666, 668-69 (8th Cir. 2015) (unpublished per curiam opinion).

Alpert also relies on Britt v. State , 363 N.C. 546, 681 S.E.2d 320 (2009), in which the North Carolina Supreme Court found a statute banning possession of firearms was unconstitutional as applied to a challenger who had one felony drug conviction from 1979, had his right to possess firearms restored before the ban was enacted, had no further criminal history, there was no evidence he misused a firearm in any way, and there was no determination he was violent, potentially dangerous, or more likely than the general public to commit a crime involving a firearm. Britt was decided on state, not federal, constitutional law. This Court declines to apply North Carolina's state constitutional analysis when analyzing whether a Missouri statute violates the federal constitution.