

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD86474 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| LEO B. ROBINSON, JR., | ) | February 19, 2025 |
| | ) | |
| Appellant. | ) | |
| | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
**Honorable J. Hasbrouck Jacobs, Judge**

**Before Division Two: Janet Sutton, Presiding Judge,**
**Alok Ahuja, Judge, and Mark D. Pfeiffer, Judge**


Leo Robinson, Jr., (Robinson) appeals from the judgment entered by the Circuit Court of

Boone County, Missouri, (trial court) following a jury trial in which he was found guilty of one

count of unlawful possession of a firearm. On appeal, Robinson argues that the trial court erred

in overruling his motion to dismiss the unlawful possession of a firearm count because section

571.070 is unconstitutional as applied to Robinson. Finding no error, we affirm.

**Factual and Procedural Background**

On April 9, 2021, a two-count indictment charged Robinson with one count of second-degree felony murder under section 565.021 and one count of unlawful possession of a firearm under section 571.070.[1] As relevant to this appeal, Count II alleged:

> [T]hat on or about March 14, 2021, in the County of Boone, State of Missouri, [Robinson] knowingly possessed a handgun, a firearm, and on July 11, 2006, [Robinson] was convicted of the class D felony of resisting arrest by fleeing and creating a substantial risk of serious injury or death to any person[.]

In October 2022, Robinson filed a motion to dismiss Count II (motion to dismiss) for being unconstitutional as applied. Robinson argued that section 571.070[2] "as applied to [Robinson], is unconstitutional in that it discriminates any felony offender from lawfully possessing a firearm for protection through means-end (strict) scrutiny. It does not comport with the plain text, or historical tradition as it relates to prior Missouri laws and statutes."[3] The motion alleged that section 571.070 violated Robinson's right to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution and the Missouri Constitution. In response to the motion to dismiss, the State pointed to *State v. Merritt*, 467 S.W.3d 808, 815 (Mo. banc 2015), in which the Missouri Supreme Court held section 571.070.1

---

[1] All statutory citations are to the Revised Statutes of Missouri (2016) as currently updated.

[2] Section 571.070.1(1) provides in pertinent part:

> 1. A person commits the offense of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and: (1) such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony[.]

[3] Robinson's motion to dismiss references the underlying felony conviction alleged to support the felon in possession charge as a felony driving while revoked. As noted *supra*, however, the original indictment alleged a felony resisting arrest conviction as part of its felon in possession count.

constitutional because the felon-in-possession law "is sufficiently narrowly tailored to achieve the compelling interest of protecting the public from firearm-related crime."

The motion to dismiss was addressed by the trial court at a November 2022 hearing. After brief argument by Robinson's trial counsel, the motion was denied.

In March 2023, a superseding indictment charged Robinson with one count of unlawful possession of a firearm, one count of second-degree felony murder, and one count of armed criminal action.[4] Robinson was charged as a prior and persistent offender under sections 558.016 and 557.036 as to all three counts, in that he had been found guilty of two or more felonies committed at different times.

Robinson filed a motion to reconsider his motion to dismiss the unlawful possession of a firearm count.[5] The trial court denied the motion.

Robinson's jury trial was held in July 2023. The evidence, viewed in the light most favorable to the verdict,[6] showed the following: On March 14, 2021, Robinson was parked in a lot when his ex-girlfriend and Victim parked nearby. Words were exchanged. Robinson got out of his car and approached Victim's car. Victim got out of his car and walked toward Robinson's car. Robinson returned to his own car and then used a handgun to shoot Victim in the face. A loaded handgun was found near Victim's body. Victim died from the gunshot wound. Robinson drove away.

---

[4] Four felony convictions were listed as the underlying prior conviction to support the felon in possession offense: (1) class D felony of driving while suspending or revoked; (2) class C felony of possession of a controlled substance; (3) class C felony of possession of a controlled substance; (4) class D felony of sale of an imitation controlled substance.

[5] The unlawful possession of a firearm count was listed as Count II in the original indictment, but listed as Count I in the superseding indictment.

[6] *State v. Jackson-Bey*, 690 S.W.3d 181, 183 (Mo. banc 2024); *State v. Letica*, 356 S.W.3d 157, 161 (Mo. banc 2011).

Without objection, the State admitted certified copies of Robinson's prior convictions which were pled on the superseding indictment. The trial court found, beyond a reasonable doubt, that Robinson was a prior and persistent felony offender because he had been found guilty of two or more felonies committed at different times. Immediately after opening statements, the trial court read to the jury the parties' stipulation: "Defendant states that on or about April 20th, 2009, Defendant was convicted of a felony in the Circuit Court of Boone County, Missouri, and that Defendant was aware of this felony conviction."

The jury found Robinson guilty of Count I for unlawful possession of a firearm and not guilty of Counts II and III, the second-degree felony murder count and the accompanying armed criminal action count. Robinson was sentenced to ten years' imprisonment.

Robinson appeals.

**Standard of Review**

The constitutional validity of a state statute is reviewed *de novo*. *Alpert v. State*, 543 S.W.3d 589, 595 (Mo. banc 2018); *Int. of D.B.*, 616 S.W.3d 748, 756 (Mo. App. W.D. 2021) (citations omitted). *See also State v. Salcedo*, 695 S.W.3d 109, 113 n.3 (Mo. App. W.D. 2024) (citation and internal quotations omitted) ("[W]here the facts are uncontested and the only issue is a matter of statutory construction, the trial court's ruling on a motion to dismiss is subject to *de novo* review."). We presume statutes are valid and will only declare a statute unconstitutional if it clearly contravenes a constitutional provision. *Alpert*, 543 S.W.3d at 595.

**Legal Analysis**

On appeal, Robinson argues that the trial court erred in overruling his motion to dismiss the unlawful possession of a firearm charge under section 571.070 and entering a conviction and sentence for this offense because the statute is unconstitutional as applied to him under the

4

Second and Fourteenth Amendments of the United States Constitution and article I, section 23 of the Missouri Constitution.[7] Robinson does not challenge the sufficiency of the evidence to support his conviction.

### *Jurisdictional Statement*

Before we address Robinson's sole point on appeal, we must first address his assertion that the Missouri Supreme Court has exclusive appellate jurisdiction because his claim involves the validity of a state statute and his request that we transfer this matter for resolution of his appeal. *See J.N.W. v. Juv. Officer*, 643 S.W.3d 618, 627 (Mo. App. W.D. 2022) ("[W]e have a duty to determine *sua sponte* whether we have jurisdiction to entertain this appeal.").

Under article V, section 3 of the Missouri Constitution, the Missouri Supreme Court has exclusive jurisdiction over cases concerning a state statute's validity. *State v. Thomas*, 618 S.W.3d 609, 611 (Mo. App. E.D. 2020); *State v. Frye*, 566 S.W.3d 658, 666 n.4 (Mo. App. W.D. 2019). "However, a party's mere assertion that a statute is unconstitutional does not deprive the court of appeals of jurisdiction." *Frye*, 566 S.W.3d at 666 n.4. The constitutional issues must be "real and substantial, and not merely colorable," for the Missouri Supreme Court's exclusive appellate jurisdiction to be invoked. *Thomas*, 618 S.W.3d at 611. A claim is merely colorable if the United States Supreme Court or Missouri Supreme Court has already addressed the constitutional challenge. *Id.* (quoting *State v. Henry*, 568 S.W.3d 464, 479 (Mo. App. E.D. 2019)). If the claim is merely colorable, an intermediate appellate court has jurisdiction. *Id*.

---

[7] In his point relied on, Robinson also raises his rights to a fair trial and due process under the 6th Amendment to the United States Constitution and article I of the Missouri Constitution. Robinson's argument under his point relied on fails to address these claims. "When an appellant fails to cite relevant law and explain how it applies to the applicable facts, we deem the point abandoned." *Murphy v. Steiner*, 658 S.W.3d 588, 593 (Mo. App. W.D. 2022) (citation omitted). We therefore, deem that portion of his point relied on waived.

Robinson's claim is merely colorable as the Missouri Supreme Court has repeatedly addressed the constitutionality of section 571.070 under article I, section 23 of the Missouri Constitution and the Second and Fourteenth Amendments of the United States Constitution. The Missouri Supreme Court has explained "that restrictions on the right of felons to possess arms has long been recognized as an exception to the right to bear arms, and section 571.070.1 is narrowly tailored in that it does not apply to misdemeanors, felony convictions that have been pardoned, or possession of antique firearms." *State v. Clay*, 481 S.W.3d 531, 536-38 (Mo. banc 2016) (finding section 571.070.1 still survives strict scrutiny review under article I, section 23 after a Missouri constitutional amendment); *Alpert*, 543 S.W.3d at 597 (reaffirming section 571.070's constitutional validity under article I, section 23). Similarly, the Missouri Supreme Court has addressed the constitutionality of section 571.070 under the Second Amendment. *See Alpert*, 543 S.W.3d at 597-601 (concluding appellant failed to demonstrate section 571.070 violates the Second Amendment as applied).

Robinson's assertion that we are required to transfer this matter to the Missouri Supreme Court by virtue of his claim involving the validity of a state statute is clearly misplaced in light of the case law discussed *supra*. We now address Robinson's claim on the merits.

### *Point on Appeal*

Robinson grounds his argument for section 571.070's unconstitutionality in the new analytical framework outlined in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). Specifically, Robinson asserts that section 571.070 is not a regulation consistent or analogous with the Nation's historical tradition of firearms regulations and, thus, is

6

unconstitutional under the Second and Fourteenth Amendments and article I, section 23 of the Missouri Constitution.[8]

In *Bruen*, the United States Supreme Court considered whether the denial of two law-abiding, adult citizens' handgun license applications violated their Second and Fourteenth Amendment rights. *Id.* at 15-17. The statute at issue required an applicant to prove "proper cause" in order to be granted an unrestricted permit to carry a firearm outside of his home. *Id.* at 12. The Court declined to adopt the two-part analysis that combined history with means-end scrutiny which had developed in the wake of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago, Illinois*, 561 U.S. 742 (2010). *Id.* at 17-18. Instead, the Court adopted a test "requir[ing] courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26.

Following a thorough historical analysis, the Court could not conclude that there was a historical tradition of preventing law-abiding citizens with ordinary self-defense needs from carrying firearms in public, thus, finding the statute at issue unconstitutional. *Id.* at 46, 60, 71. However, the concurrence clarified that:

---

[8] The Second Amendment to the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Article I, section 23 of the Missouri Constitution guarantees:

That the right of every citizen to keep and bear arms, ammunition, and accessories typical to the normal function of such arms, in defense of his home, person, family and property, or when lawfully summoned in aid of the civil power, shall not be questioned. The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as result of a mental disorder or mental infirmity.

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. . . . **[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill**, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 81 (Kavanaugh, J., concurring) (emphasis added) (quoting *Heller*, 554 U.S. at 626-27).

The above quotation from *Heller*, as reiterated by Justice Kavanaugh's concurrence, was again emphasized in *United States v. Rahimi*, 602 U.S. 680, 690-91, 699 (2024). In *Rahimi*, the appellant challenged a federal statute prohibiting individuals subject to a domestic violence restraining order from possessing a firearm if the order found that the individual represented a credible threat to an intimate partner or child's physical safety. *Id.* at 684-85. The appellant argued *Heller* required the Court to find the statute at issue unconstitutional, because it barred individuals subject to restraining orders from possessing guns in the home, and in *Heller* the Court invalidated an "absolute prohibition of handguns . . . in the home." *Id.* at 699 (quoting *Heller*, 554 U.S. at 636). The Court rejected that argument, stating "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Rahimi*, 602 U.S. at 699 (quoting *Heller*, 554 U.S. at 626, 627 n.26). Therefore, because the restraining order contained a finding that the appellant represented a credible safety threat, the Court found he could be constitutionally banned from possessing a firearm based on our Nation's historical tradition of preventing individuals at the risk of harming others from misusing firearms. *Id.* at 689-690, 700. The Court additionally clarified that the *Bruen* analysis simply requires that a firearm regulation

8

adheres to the principles underlying the Second Amendment, and it need not be a "dead ringer" or "historical twin." *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 30).

As the State points out in its briefing, various state and federal statutes prohibiting felons from possessing firearms have continuously been upheld after *Bruen* and *Rahimi*. *See, e.g.*, *United States v. Diaz*, 116 F.4th 458, 467, 472 (5th Cir. 2024) (rejecting an as-applied and facial challenge to a federal firearm statute because the appellant convicted of car theft, evading arrest, and possessing a firearm as a felon "fits neatly" into the historical tradition of firearm regulation); *United States v. Jackson*, 110 F.4th 1120, 1121, 1125 (8th Cir. 2024) (explaining that after *Heller*, *McDonald*, *Bruen*, and *Rahimi*, a federal statute prohibiting firearm possession for individuals subject to a domestic violence restraining order is not unconstitutional as applied to the appellant based on his felony convictions and that there is "no need for felony-by-felony litigation regarding [the statute's] constitutionality"); *People v. Brooks*, 242 N.E.3d 247, 271 (Ill. App. Ct. 1st Dist. 2023) ("Since the defendant in the instant case was twice convicted of a felony, albeit nonviolent ones, he is not a law-abiding citizen, and the armed habitual criminal statute that prohibits his possession of firearms is constitutional as applied to him."); *People v. Alexander*, 308 Cal. Rptr. 3d 380, 387 (Cal. App. 4th Dist. 2023) ("[T]he Second Amendment right afforded to law-abiding citizens does not extend to convicted felons who are presently refraining from committing additional crimes."); *State v. Parras*, 531 P.3d 711, 716-17 (Or. Ct. App. 2023) (explaining that post-*Bruen* courts have upheld restrictions on felons in possession of firearm bans and "there is no historical basis for distinguishing between types of felonies based on whether they were violent or nonviolent").[9] *But see Range v. Att'y Gen. U.S.*, 124 F.4th 218,

---

[9] As Robinson notes, a similar challenge to section 571.070 under *Bruen* was also raised in the Eastern District of Missouri. *See State v. Kates*, 694 S.W.3d 462, 464 (Mo. App. E.D. 2024).

232 (3d Cir. 2024) (enjoining enforcement of federal firearm statute only as applied to the appellant previously convicted of food-stamp fraud because the record contained no evidence of physical danger and the Government did not show a longstanding history and tradition of depriving people like the appellant of their firearms).

Based on the post-*Bruen* Second Amendment jurisprudence, it is evident that statutes restricting a felon's possession of a firearm—like section 571.070—are consistent or analogous with the Nation's historical tradition of firearms regulations. Robinson stipulated at trial that he was previously convicted of a felony in the Circuit Court of Boone County, Missouri, and that he was aware of this felony conviction. We do not find section 571.070 unconstitutional as applied to him under the Second and Fourteenth Amendments.

Similarly, the Missouri Supreme Court has repeatedly upheld the constitutionality of section 571.070 under article I, section 23.[10] The Missouri Supreme Court has explained that:

> [T]he specific grant of authority in Amendment 5 [of article I, section 23] to adopt laws regulating the possession of firearms by convicted violent felons does not affect the right of the legislature to adopt laws regulating the right of others to possess firearms where, as here, those laws pass strict scrutiny. Accordingly, section 571.070.1 is a constitutional restriction of a convicted nonviolent felon's right to bear arms.

---

The court declined to consider the merits of the challenge because the appellant entered into an unconditional guilty plea and, thus, failed to preserve his claims for appeal. *Id.* at 465.

[10] Despite the *Bruen* analysis moving away from strict scrutiny with regard to Second Amendment challenges, the Missouri Constitution requires a strict scrutiny analysis. Missouri has not addressed this strict scrutiny requirement post-*Bruen* but we find an Iowa Supreme Court case instructive. The Iowa Supreme Court, post-*Bruen*, still applied the strict scrutiny test as enumerated in its state constitution. *See Int. of N.S.*, 13 N.W.3d 811, 833 (Iowa 2024) (applying the strict scrutiny analysis and finding a state firearm prohibition is narrowly tailored to serve a compelling state interest in preventing gun violence and suicides). Similar to Iowa's constitution, article I, section 23 of the Missouri Constitution states: "Any restriction on [the right to bear arms] shall be subject to strict scrutiny . . . ." *See id.* at 815.

*Alpert*, 543 S.W.3d 596-97 (quoting *Clay*, 481 S.W.3d at 538). *See Merritt*, 467 S.W.3d at 816 ("The felon-in-possession law, which bans felons from possessing firearms, with no exceptions other than possessing an antique firearm, is sufficiently narrowly tailored to achieve the compelling interest of protecting the public from firearm-related crime."). *Alpert*, *Merritt*, and *Clay* all point to the "longstanding prohibition" on the possession of a firearm by individuals with a felony conviction, as repeatedly identified by the United States Supreme Court. *See Alpert*, 543 S.W.3d at 598; *Merritt*, 467 S.W.3d at 814; *Clay*, 481 S.W.3d at 535.

Pursuant to Missouri Supreme Court precedent, we do not find section 571.070 to be unconstitutional as applied to Robinson under article I, section 23 of the Missouri Constitution.

Robinson's sole point on appeal is denied.

### Conclusion

The trial court's judgment is affirmed.

_____
Janet Sutton, Presiding Judge

Alok Ahuja, and Mark D. Pfeiffer, JJ. concur.