**Trudy LANGLEY, Appellant,**

v.

**CURATORS OF THE UNIVERSITY OF MISSOURI, Respondent.**

No. WD 60291.

Missouri Court of Appeals, Western District.

March 19, 2002.

Motion for Rehearing and/or Transfer to Supreme Court April 30, 2002.

Application for Transfer Denied May 28, 2002.

Daniel R. Dunham, Columbia, for appellant.

Colly J. Durley, Columbia, for respondent.

Before HAROLD L. LOWENSTEIN, Presiding Judge, PAUL M. SPINDEN, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Gertrude E. Langley appeals from a summary judgment entered by the Circuit Court of Boone County in favor of Respondent, the Curators of the University of Missouri ("the Curators").

On August 29, 2000, Appellant filed a petition in the Circuit Court of Boone County against several individual defendants claiming personal injury as a result of medical malpractice. On January 19, 2001, Appellant filed a motion to dismiss all of the individual defendants except Dr. Henry Griffiths, Dr. John Gay, and Dr. Elizabeth Wilson. That same day, Appellant filed her first amended petition adding the Curators as a party defendant with the three individual defendants.

On January 22, 2001, Appellant filed a petition in the Circuit Court of the City of St. Louis against Dr. Kathleen Paulson, one of the original defendants in the Boone County action, alleging personal injury as a result of medical malpractice arising out of the same events involved in the Boone County action. On February 5, 2001, Appellant filed a motion to dismiss Dr. Griffiths, Dr. Gay, and Dr. Wilson from the Boone County action, leaving only the Curators as a party defendant in the Boone County case. On February 8, 2001, Appellant filed a first amended petition in the St. Louis action adding Dr. Gay and Dr. Wilson, both of whom are Boone County residents, as defendants in that case.

On June 8, 2001, the Curators filed a motion for summary judgment based on the sovereign immunity doctrine. On July 24, 2001, the trial court entered its order granting the Curators' motion for summary judgment.

In her sole point on appeal, Appellant claims the trial court erred in entering summary judgment in favor of the Curators. In support of her contention, Appellant argues that the Curators waived protection under the sovereign immunity doctrine, pursuant to § 537.610,[1] by way of insurance policies obtained by the Curators.

■ Curiously, the Curators initially assert that this Court lacks jurisdiction over this appeal through a convoluted argument related to the pending action in the City of St. Louis. The Curators contend that the suit filed in the City of St. Louis is likely to be transferred to Boone County and asserts that, if transfer occurs, the trial court's judgment in this case would not dispose of all issues. Accordingly, notwithstanding the fact that the Curators were awarded summary judgment below, their position is that we must dismiss the appeal. The Curators' jurisdictional argument has no merit.

The case pending before the City of St. Louis is not before this Court. This appeal relates solely to the suit filed in Boone County. While the Boone County case originally involved a multitude of defendants, prior to the trial court's entry of summary judgment, all of the defendants aside from the Curators had been voluntarily dismissed by Appellant. Accordingly, the trial court's entry of summary judgment in favor of the Curators in the Boone County action disposed of all issues pending before the court with regard to all of the parties to that action. Since the trial court's award of summary judgment in favor of the Curators resolved all issues by determining that Appellant was not entitled to any recovery against the Curators under the allegations contained in the petition, it constituted a final, appealable judgment which we have jurisdiction to review. *First Nat. Bank of Annapolis, N.A. v. Jefferson Ins. Co. of New York*, 891 S.W.2d 140, 142 (Mo.App. S.D.1995). While the judgment in this case may ultimately affect Appellant's other suit currently pending in the City of St. Louis in some way, issues of that nature are not implicated in this appeal and do not affect this Court's jurisdiction. Therefore, we must address the merits of Appellant's claim that the trial court erred in granting summary judgment in favor of the Curators.

Our review of the trial court's decision to grant a motion for summary judgment is essentially *de novo*, and this Court applies the same criteria as the trial court in determining whether summary judgment was properly granted. *Robinson v. Missouri State Highway & Transp. Comm'n*, 24 S.W.3d 67, 73 (Mo.App. W.D.2000) (quoting *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). "Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law." *Id.* When considering appeals from summary judgments, we review the evidence and all reasonable inferences drawn therefrom in the light most favorable to the party against whom judgment was entered. *Id.* "Where the record reasonably supports any inference other than those necessary to support a judgment for the movant, a genuine issue of material fact exists and the movant's motion for summary judgment should be overruled." *J.M. v. Shell*

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

*Oil Co.*, 922 S.W.2d 759, 761 (Mo. banc 1996).

"Section 537.600, RSMo 1994, provides that the doctrine of sovereign immunity remains the general rule in Missouri protecting public entities from liability for negligent acts." *Fantasma v. Kansas City, Mo., Board of Police Comm'rs*, 913 S.W.2d 388, 391 (Mo.App. W.D.1996). The Curators of the University of Missouri "is 'a public entity with the status of a governmental body and, as such, is immune from suit for liability in tort in the absence of an express statutory provision.'" *Brennan by and through Brennan v. Curators of the Univ. of Mo.*, 942 S.W.2d 432, 434 (Mo.App. W.D.1997) (quoting *Krasney v. Curators of Univ. of Mo.*, 765 S.W.2d 646, 649 (Mo.App. W.D.1989)). "Liability of a political subdivision for torts is the exception to the general rule of sovereign immunity, hence it is incumbent on a party seeking to establish such liability to demonstrate an exception exists." *State ex rel. Ripley County v. Garrett*, 18 S.W.3d 504, 509 (Mo.App. S.D.2000).

Under § 537.610, when a public entity purchases liability insurance or duly adopts a self-insurance plan for tort claims, sovereign immunity is waived to the extent of the amount provided and for the specific purposes set forth in the insurance plan. *§ 537.610; See also Fantasma*, 913 S.W.2d at 391; *Brennan by and through Brennan*, 942 S.W.2d at 434. Appellant contends that the Curators waived their sovereign immunity with regard to her claim by purchasing an excess liability insurance policy in this fashion.

No genuine dispute exists with regard to the insurance plans maintained by the Curators at the time of the alleged incident. The Curator's had duly adopted a self-insurance plan to provide primary coverage up to $1,000,000.00 per occur-

rence for the Curators and their employees for:

all sums which the covered person shall become legally obligated to pay as damages because of injury to the person or property of a patient arising out of the operations of a medical facility or because of injury arising out of the rendering of or failure to render, while the Plan is in effect, professional services by the covered person, or by any person whose acts or omissions such covered person is legally responsible, performed in the practice of the individual covered person's profession including service by the individual covered person as a member of a formal accreditation or similar professional board or committee of a medical facility or professional society.

However, this self-insurance plan expressly states that "[n]othing in this Plan shall be construed as a waiver of any governmental immunity of the Employer, the Board of Curators of the University of Missouri nor any of its employees in the course of their official duties."

"The purchase of liability insurance does not waive sovereign immunity unless it provides for coverage of liability other than the two exceptions set forth in § 537.600." *Brennan by and through Brennan*, 942 S.W.2d at 436. A public entity does not waive its sovereign immunity by maintaining an insurance policy where that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity. *State ex rel. Board of Trustees of City of North Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. banc 1992); *Casey v. Chung*, 989 S.W.2d 592, 594 (Mo. App. E.D.1998); *State ex rel. Ripley County*, 18 S.W.3d at 507–08. Since the Curators' self-insurance plan contains such language, Appellant cannot establish that the

self-insurance plan gives rise to a waiver of their sovereign immunity.

Recognizing that sovereign immunity was expressly retained by the Curators in their self-insurance plan, thereby defeating her claim, Appellant seizes on the Curators' purchase of an excess liability insurance policy as a basis for claiming waiver. She contends that Endorsement # 6 of the excess liability policy contains language contrary to the self-insurance policy's provisions retaining sovereign immunity for the Curators and evinces the intent of the Curators to waive their sovereign immunity.

Appellant's argument requires us to interpret the language of the two insurance policies. "The interpretation of the meaning of an insurance policy is a question of law." *American Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett*, 31 S.W.3d 1, 4 (Mo.App. W.D.2000). In interpreting insurance policies, we apply the rules applicable to contract construction. *Miller v. Farm Bureau Town & Country Ins. Co.*, 6 S.W.3d 432, 437 (Mo.App. S.D. 1999). "When construing the language of an insurance contract, we 'construe the policy and the endorsements thereon as one contract and, if possible, give effect to each and every provision thereof.'" *Shields v. Farmers Ins. Co.*, 948 S.W.2d 247, 249 (Mo.App. E.D.1997) (quoting *Cain v. Robinson Lumber Co.*, 365 Mo. 1238, 295 S.W.2d 388, 390 (1956)).

Endorsement # 6 provides: "It is agreed that the Company will not limit coverage provided under this contract, or limit the amount the *insured* may claim as

the retained limit under this contract, to the amounts specified in Section 537.610, RSMo."[2] Based on this language, Appellant asserts that "[o]bviously the purpose of purchasing such insurance was to thereby reverse its prior declination to waive its sovereign immunity and voluntarily exercise its power under § 537.610 RSMo to waive [the Curators'] sovereign immunity for claims as to which such insurance (and its self-insurance plan) provided coverage."

The endorsement simply cannot be interpreted in the manner proposed by Appellant. The language relied upon by Appellant relates solely to the amount of coverage provided by the excess liability policy and does not expressly or implicitly expand the nature of the torts meant to be covered by the self-insurance plan. Endorsement # 6 seeks only to guarantee coverage in excess of the two-million-dollar limit set out in § 537.610. Nothing in the language of the endorsement purports to extend coverage for liability beyond the two mandatory statutory exceptions to sovereign immunity set forth in § 537.600.

This conclusion is bolstered by two additional provisions in the excess liability policy. First, the coverage section of the excess liability insurance policy obtained by the Curators provides that the excess liability policy is "subject to the same terms, conditions, agreements, exclusions and definitions" as the underlying self-insurance plan unless provisions to the contrary are contained elsewhere in the excess liability policy. The self-insurance plan expressly retains the Curators' sovereign immunity. Endorsement # 6 does not contradict

---

**2.** Section 537.610.1 provides:

[T]he governing body of each political subdivision of this state ... may purchase liability insurance for tort claims, made against the state or the political subdivision, but *the maximum amount of such coverage shall not exceed two million dollars for all*

*claims arising out of a single occurrence ... and no amount in excess of the above limits shall be awarded or settled upon.*
(emphasis added). The clear purpose of Endorsement # 6 was to avoid the two million dollar coverage limit provided in § 537.610.1.

those provisions. Therefore, the provisions of the self-insurance plan retaining sovereign immunity are applicable to the excess liability insurance.

Secondly, with regard to the coverage provided, the excess liability policy further states: "We will pay those sums, in excess of the amount payable under the terms of any underlying insurance, that the insured becomes legally obligated to pay as damages because of injury or damage to which this insurance applies, *provided that the underlying insurance*[3] *also applies, or would apply but for the exhaustion of its applicable limits of insurance.*" (emphasis added). Endorsement # 6 does not modify this coverage requirement in any way. Because the retention of sovereign immunity in the self-insurance plan renders that insurance inapplicable to Appellant's claims, the excess liability policy likewise could not apply.

In sum, Appellant failed to meet her burden of establishing that the Curators waived their sovereign immunity by maintaining these insurance policies. The self-insurance plan expressly retains the Curators' sovereign immunity, and the language of the excess liability insurance policy incorporates that provision by reference. Nothing in the endorsement language relied on by Appellant conflicts with the provisions retaining the Curators' sovereign immunity.

Accordingly, the trial court's grant of summary judgment is affirmed.

All concur.

---

3. The policy expressly sets forth that the underlying insurance referenced in this provision is the Curator's self-insurance policy.