IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
STATE OF MISSOURI, ex rel., )
ERIC SCHMITT, ATTORNEY )
GENERAL, )
 )
 Appellant, )
 )
v. ) WD83427
 )
MUN CHOI, et al., ) Opinion filed: February 2, 2021
 )
 Respondents. )

 APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI
 THE HONORABLE JEFF HARRIS, JUDGE

 Division One: Thomas N. Chapman, Presiding Judge,
 Mark D. Pfeiffer, Judge and W. Douglas Thomson, Judge

 This appeal involves a challenge by the State of Missouri, at the relation of

Attorney General Eric Schmitt ("State") to section 110.010.B.4(a) of the University of

Missouri System Rules and Regulations ("Rule") which operates to prohibit

University of Missouri employees from possessing firearms in their vehicles on

university campuses. The State appeals from the trial court's judgment in favor of

Mun Choi and the Curators of the University of Missouri (collectively, the

"University") entered in part on the pleadings and in part after a bench trial. On

appeal, the State claims the trial court erred in: (1) finding the Rule does not conflict
with section 571.030.6;1 (2) holding the State has the burden of proof under strict

scrutiny review; (3) finding the Rule survives strict scrutiny review; and (4) in

admitting opinion testimony from lay witness, Dr. Mun Choi ("Dr. Choi"), President

of the University of Missouri System. We affirm in part, reverse in part, and remand

to the trial court for proceedings consistent with this opinion.

 Factual and Procedural History

 The material facts are not in dispute. In 2015, Royce Barondes ("Barondes"),

a University of Missouri employee, filed a petition for declaratory and injunctive relief

against the University in case number 15AC-CC00426 in the Cole County circuit

court. The petition alleged that the Rule violates section 571.030.6 and challenged

the Rule's constitutionality. In October 2015, the case was removed to federal court.

In November 2015, Barondes filed an amended complaint removing all allegations

pertaining to any federal question. In May 2016, the case was remanded back to the

Cole County circuit court.

 In August 2016, the State intervened and the action was transferred to Boone

County circuit court and given case number 16BA-CV03144. The State filed a

parallel action in Boone County circuit court in its own name raising similar claims

in case number 16BA-CV02758. In both actions, the State alleges four counts. In

count one, the State alleges statutory preemption asserting the Rule conflicts with

section 571.030.6. In general, the Rule prohibits the possession and discharge of

weapons on campus, and the State's claim is that 571.030.6 allows state employees

 1
 All statutory references are to RSMo 2000, as supplemented, unless otherwise indicated.

 2
to possess a firearm on state property in certain circumstances. In counts two, three,

and four the State alleges as applied constitutional challenges. On September 8,

2017, the State moved for judgment on the pleadings on its count I, in both actions,

arguing that the Rule conflicts with section 571.030.6. The University filed a motion

for judgment on the pleadings against Barondes and a cross-motion for judgment on

the pleadings against the State on all counts. Barondes filed a motion for summary

judgment on count I of his second amended petition, which contained his allegation

that the Rule violates section 571.030.6.

 On September 5, 2018, the trial court entered an order and judgment with both

case numbers 16BA-CV02758 and 16BA-CV03144, denying the University's motion

and cross-motion on the State's and Barondes' constitutional claims but granting the

University's motion and cross-motion for judgment on the pleadings on the section

571.030.6 claims.2 Thereafter, pursuant to a settlement agreement, the remaining

claims between Barondes and the University were dismissed with prejudice. A bench

trial was held on the State's remaining claims challenging the constitutionality of the

Rule. On November 18, 2019, the trial court entered findings of fact, conclusions of

law and judgment in favor of the University finding the Rule satisfies strict scrutiny

review and is constitutional. The State appeals.

 2
 Regarding the constitutional claims, the trial court stated that it disagreed with the
University's argument that because there is no constitutional right to bear arms on University
property, the plaintiff's claims should be dismissed without any constitutional analysis. The trial court
found the Rule is not exempt from some level of constitutional scrutiny to determine whether it passes
constitutional muster.

 3
 On appeal, the State claims the trial court erred in: (1) finding the Rule does

not conflict with section 571.030.6; (2) holding the State has the burden of proof under

strict scrutiny review; (3) finding the Rule survives strict scrutiny review; and (4) in

admitting opinion testimony from Dr. Choi.

 Point I—Section 571.030.6 preempts the Rule

 In Point I, the State claims that the trial court erred in granting judgment on

the pleadings in favor of the University, finding that the Rule is not preempted by

section 571.030.6 because the Rule conflicts with section 571.030.6 under either the

statute's plain and ordinary meaning or after applying principles of statutory

construction, in that the statute plainly provides that state entities such as the

University shall not prohibit their employees from having firearms which are not

visible in their locked vehicles while conducting activities within the scope of their

employment, and in that all applicable principles of statutory interpretation support

the State's view of this interpretation. We agree.

 Standard of Review

 "The question presented in a motion of judgment on the pleadings is whether

the moving party is entitled to judgment as a matter of law on the face of the

pleadings." Buehrle v. Missouri Dept. of Corrections, 344 S.W.3d 269, 270 (Mo. App.

E.D. 2011). "'A court's grant of judgment on the pleadings is reviewed de novo.'" Bell

v. Phillips, 465 S.W.3d 544, 547 (Mo. App. W.D. 2015) (citation omitted). Moreover,

here the State challenges the trial court's interpretation of section 571.030.6, and

 4
"[s]tatutory interpretation is a question of law" that we review de novo. Henry v.

Piatchek, 578 S.W.3d 374, 378 (Mo. banc 2019).

 Analysis

 "The issue of preemption may be divided into two questions: (1) Has the

Missouri legislature expressly preempted the area?; and (2) Is the [University's]

regulation in conflict with state law?" St. Charles County Ambulance Dist v. Town of

Dardenne Prairie, 39 S.W.3d 67, 68 (Mo. App. E.D. 2001). "In construing statutes to

determine whether the area of regulation has been expressly preempted, we look to

the statute's plain and ordinary meaning." Id. at 68-69. "[W]hen the expressed or

implied provisions of the local regulation and the state statute are inconsistent and

in irreconcilable conflict, then the local regulation is void. A conflict exists if the local

regulation 'permits what the statute prohibits' or 'prohibits what the statute

permits.'" Id. at 69 (citations omitted).3 "In order to interpret the expressions

'prohibit what the statute permits' and 'permits what the statute prohibits' we look

to specific substantive prohibitions and liberties in the statute[.]" Miller v. City of

Town & Country, 62 S.W.3d 431, 438 (Mo. App. E.D. 2001).

 "This Court's primary rule of statutory interpretation is to give effect to

legislative intent as reflected in the plain language of the statute at issue." Karney

v. Dep't of Labor & Indus. Relations, 599 S.W.3d 157, 162 (Mo. banc 2020) (internal

quotation marks omitted). Accordingly:

 We will look beyond the plain meaning of the statute only when the
 language is ambiguous or would lead to an absurd or illogical result. A
 statute is ambiguous when its plain language does not answer the

 3
 This preemption analysis is equally applicable to the University's Rule as to local regulations.

 5
 current dispute as to its meaning. Ambiguities in statutes are resolved
 by determining the intent of the legislature and by giving effect to its
 intent if possible. When determining the legislative intent of a statute,
 no portion of the statute is read in isolation, but rather the portions are
 read in context to harmonize all of the statute's provisions. Rules of
 statutory construction are used to resolve any ambiguities if the
 legislative intent is undeterminable from the plain meaning of the
 statutory language.

Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co., 597 S.W.3d 362, 367 (Mo. App.

W.D. 2020) (quoting Truman Med. Ctr., Inc. v. Am. Standard Ins. Co., 508 S.W.3d

122, 124-25 (Mo. App. W.D. 2017) (internal quotation marks omitted)).

 Section 571.030.6 provides:

 Notwithstanding any provision of this section to the contrary, the state
 shall not prohibit any state employee from having a firearm in the
 employee's vehicle on the state's property provided that the vehicle is
 locked and the firearm is not visible. This subsection shall only apply to
 the state as an employer when the state employee's vehicle is on
 property owned or leased by the state and the state employee is
 conducting activities within the scope of his or her employment. For the
 purposes of this subsection, 'state employee' means an employee of the
 executive, legislative, or judicial branch of the government of the state
 of Missouri.

 The Rule provides, in pertinent part, "The possession of . . . firearms . . . on

University property . . . is prohibited except in regularly approved programs or by

University agents or employees in the line of duty."4

 In its judgment on the pleadings, the trial court concluded the Rule does not

conflict with section 571.030.6. The trial court found:

 The Rule does not conflict with and is not invalidated by Section
 571.030.6. Section 571.030.6, by its own language, addresses criminal

 4The full text of the Rule provides, "The possession of and discharge of firearms, weapons, and

explosives on University property including University farms is prohibited except in regularly
approved programs or by University agents or employees in the line of duty." In this appeal, the State
is only challenging the Rule as it relates to firearms.

 6
 conduct, and does not determine what defendants can regulate as a civil
 matter on their own property.

 The plain language of Section 571.030.6 supports defendants' argument
 that the Rule does not conflict with the statute. Section 571.030.6 begins
 with the clause, 'Notwithstanding any provision of this section to
 contrary.' 'Notwithstanding' means 'despite' or 'in spite of.' See, e.g.,
 Black's Law Dictionary at 1094. The 'section' referred to is Section
 571.030, which begins, 'A person commits the offense of unlawful use of
 weapons, except as otherwise provided . . . if he or she knowingly . . .'
 RSMo Section 571.030.1. Section 571.030 goes on to define the criminal
 offense of unlawful use of weapons and enumerate exceptions to the
 offense and punishment for the offense. See, e.g., RSMo Section
 571.030.1(3) (a person commits the offense of unlawful use of a weapon
 if he knowingly 'discharges or shoots a firearm into a dwelling house');
 RSMo Section 571.030.2 (exempts uses associated with or necessary to
 fulfilling 'official duties') RSMo Section 571.030.9 (listing criminal
 sentences for violations). Section 571.030.6, accordingly, addresses
 what conduct constitutes the unlawful use of weapons, and not what
 conduct the University can regulate on its property as a civil matter.

 In concluding that the Rule does not conflict with the statute, the Court
 simply cannot ignore the plain language and meaning of the
 'notwithstanding' clause and read the rest of Section 571.030.6 in
 isolation. 'Notwithstanding,' as noted above, quite obviously means
 'despite,' or 'in spite of,' and the Court must give effect to its plain
 meaning. In doing so, the Court gives no effect or significance to the
 title of the statute given by the Revisor. The plain language controls.
 There is no conflict between the Rule and Section 571.030.6. For these
 reasons, the Court grants defendants' motions as to plaintiffs' 571.030.6
 claims.

 We disagree with the trial court's analysis. The Rule directly conflicts with

section 571.030.6 in that it prohibits what the statute expressly directs the state not

prohibit. St. Charles County Ambulance Dist., 39 S.W.3d at 69. The plain language

of section 571.030.6 provides a mandatory directive, "the state shall not prohibit any

state employee from having a firearm in the employee's vehicle on the state's property

 7
provided that the vehicle is locked and the firearm is not visible." (emphasis added).5

See Allen v. Public Water Supply Dist. No. 5 of Jefferson County, 7 S.W.3d 537, 540

(Mo. App. E.D. 1999) ("The term 'shall' is used in laws, regulations, or directives to

express what is mandatory."). The University's Rule directly conflicts with this

mandatory directive of section 571.030.6.

 This mandatory directive is preceded by the phrase, "Notwithstanding any

provision of this section to the contrary," which means only that no other provision of

section 571.030 can be held in conflict with it. See State ex rel. City of Jennings v.

Riley, 236 S.W.3d 630, 632 (Mo. banc 2007). The trial court looked to the dictionary

definition of "notwithstanding" and concluded it means "despite" or "in spite of."

However, when reading "notwithstanding" in the context of section 571.030.6, the

trial court understood "in spite of" to mean "in spite of and only in spite of." That is

not a plain reading of the word "notwithstanding." It likewise miscomprehends how

notwithstanding clauses operate.

 In Riley, the Missouri Supreme Court succinctly explained how a prefatory

notwithstanding clause operates with respect to the provision that follows it. Id. at

631. Riley involved the interpretation of two venue statutes. Id. One of the statutes

provided:

 5It is undisputed that the University is a state employer and its employees are state employees.

"[T]he Board of Curators of the University of Missouri is invested by constitutional mandate as a public
entity with the status of a governmental body and, as such, is immune from suit for liability in tort in
the absence of an express statutory provision." Krasney v. Curators of Univ. of Missouri, 765 S.W.2d
646, 649 (Mo. App. W.D. 1989). "'Section 537.600, RSMo1994, provides that the doctrine of sovereign
immunity remains the general rule in Missouri protecting public entities from liability for negligent
acts.'" Langley v. Curators of Univ. of Missouri, 73 S.W.3d 808, 811 (Mo. App. W.D. 2002) (citation
omitted).

 8
 Notwithstanding any other provision of law, in all actions in which there
 is any count alleging a tort and in which the plaintiff was first injured
 in the state of Missouri, venue shall be in the county where the plaintiff
 was first injured by the wrongful acts or negligent conduct alleged in the
 action.

Section 508.010.4, RSMo Supp. 2005. As the Missouri Supreme Court recognized,

"[i]f those words mean what they say, so that section 508.010.4 applies

notwithstanding section 508.050, the case should remain in St. Louis City." Id. This

was the only conclusion possible when "'giving the language used its plain and

ordinary meaning.'" Id. (citation omitted). This was true because "section 508.010.4,

by its plain meaning, expressly appl[ied] to the exclusion of all [other] laws to the

contrary." Id. (emphasis added). The scope of the general tort venue statute was not

limited to the extent that it conflicted with other laws. It does not operate merely as

an exception to other laws. Rather, the opposite is true. It operates to the exclusion

of contrary laws and not as an exception to the contrary laws.

 Applying the Missouri Supreme Court's interpretation of a notwithstanding

clause to the statute in this matter, it is apparent that the operation of section

571.030.6 is not limited by its prefatory notwithstanding clause. Thus, applying the

Riley court's understanding of a notwithstanding clause, by its plain meaning the

mandatory directive expressed in section 571.030.6 applies to the exclusion of all

other provisions of section 571.030 to the contrary. See id. Quite simply, section

571.030 does not limit the application of section 571.030.6 merely because of the

notwithstanding clause that prefaces section 571.030.6. This is a necessary

conclusion when the language used is given its plain and ordinary meaning. See id.

 9
Thus, even if the mandatory directive of 571.030.6 conflicts with other provisions set

forth in section 571.030, the mandatory directive prevails.6 Thus, the University's

Rule is in irreconcilable conflict with the mandatory directive of section 571.030.6,

rendering the Rule void to the extent of that conflict. St. Charles County Ambulance

Dist., 39 S.W.3d at 69.

 The trial court's analysis focuses primarily on the notwithstanding clause itself

and ignores the mandatory directive that is contained in section 571.030.6. In doing

so, the trial court's analysis fails to give proper effect to the words following the

notwithstanding clause, the mandatory directive language of section 571.030.6.

"'[E]very word, clause, sentence, and provision of a statute must have effect.'

Presumably, the legislature did not insert superfluous language in a statute." St.

Charles Co. v. Dir. of Rev., 407 S.W.3d 576, 578 (Mo. banc 2013) (citation omitted).

 Moreover, there is nothing in section 571.030.6 that supports the trial court's

conclusion that its application is limited to section 571.030, which provides for the

crime of unlawful use of weapons. Although the notwithstanding clause references

section 571.030, it does so only to provide that the application of subsection 6 prevails

to the extent of any conflict therein. Section 571.030.6 does not provide that the

mandatory directive applies only to exempt criminal liability under section 571.030.

In fact, there is no limiting language from which we could conclude that the

 6For example, section 571.030.6 could otherwise be in conflict with 571.030.1(8), which
provides that a person commits the offense of unlawful use of weapons if he knowingly "[c]arries a
firearm . . . into any building owned by any agency of the … state government…." A conflict between
section 571.030.1(8) and section 571.030.6 could arise where such state government building has self-
contained parking and the person carrying the firearm in her or his vehicle is a state employee. Thus,
the "Notwithstanding clause" operates to eliminate such conflict.

 10
mandatory directive contained in subsection 6 is applicable only to criminal liability

for the crime of unlawful use of weapons.

 The University argues that 571.030.6, like subsections 2 through 5 of said

section, is simply an exception to the criminal liability which would be imposed for

certain uses of weapons deemed unlawful by 571.030.1 granted to certain persons and

actions. This simply cannot be the case when "'giving the language used its plain and

ordinary meaning.'" Riley, 236 S.W.3d at 331 (citation omitted). Subsections 2, 3, 4,

and 5 specifically and indisputably create defenses to the weapons offenses described

in subsection 1.7 Conversely, 571.030.6 does not merely create an exception to

criminal liability by stating that 571.030.1 "shall not apply" in certain situations.

Rather, given its plain and ordinary meaning, subsection 6 expressly applies to "the

state" and is a prohibition of what the state, as an employer, can do. Prohibiting

certain actions of the State as an employer is far different than exempting certain

persons or actions from criminal liability. This argument is of no effect.

 Therefore, we conclude that to the extent the Rule prohibits state employees

from having a firearm that is not visible in the employee's locked vehicle on state's

property while the employee is conducting activities within the scope of his or her

employment, the Rule is in conflict with section 571.030.6 and is therefore void. Our

holding does not extend to the remainder of the Rule, which also prohibits the

 7Section 571.030.2 provides that certain subsection 1 weapons offenses "shall not apply to the

persons described in this subsection…." Subsection 3 provides that certain subsection 1 weapons
offenses "do not apply when the actor is transporting such weapons in a nonfunctioning state…."
Subsection 4 provides that certain subsection 1 weapons offenses "shall not apply to any person who
has a valid concealed carry permit." Subsection 5 provides that certain subsection 1 weapons offenses
shall not apply "to persons who are engaged in a lawful act of defense…."

 11
possession of weapons8 and explosives, and the "discharge of firearms, weapons, and

explosives on University property," as such prohibitions are not in conflict with

section 571.030.6. Likewise, our holding does not impede the University's further

regulation of firearms where such regulation is not in conflict with the express

mandatory directive of section 571.030.6. Accordingly, we find that the trial court

erred in its judgment on the pleadings in favor of the University finding the Rule was

not invalidated by section 571.030.6.

 Point I is sustained.

 Points II and III--The Rule Survives Strict Scrutiny

 Although we found that the Rule is void to the extent that it conflicts with

section 571.030.6 in Point I, that determination does not resolve all the issues raised

in this appeal. We review the trial court's determination that the Rule survives strict

scrutiny because it regulates conduct in addition to that which was found in conflict

with section 571.030.6. In addition to prohibiting the possession of firearms on

University property as discussed in Point I, the Rule also prohibits the possession of

weapons and explosives on University property, and the "discharge of firearms,

weapons, and explosives on University property," prohibitions which are not in

conflict with section 571.030.6.

 8We recognize that the University has actually prohibited the possession of firearms in its Rule

twice, first by specifically referencing firearms and again in its reference to weapons, firearms being a
subset of weapons. To this extent, and for purposes of possession only, firearms must be excluded from
the term 'weapons' in the University's Rule as a result of our ruling.

 12
 In Point II, the State asserts the trial court erred in holding the State had the

burden of proof under the strict scrutiny review in that the University, as the

government entity restricting the constitutional right, had the burden of proof to

show a narrow tailoring to achieve a compelling interest. In Point III, the State

claims that the trial court erred in finding that the Rule survives strict scrutiny

review in that the University failed to meet its burden of proving that the Rule is

narrowly tailored to advance the compelling governmental interest in promoting

safety and reducing crimes.

 Standard of Review

 Who has the burden of proof is a question of law which we review de novo.

Earth Island Institute v. Union Electric Company, 456 S.W.3d 27, 32 (Mo. banc

2015). "[T]he decree or judgment of the trial court will be sustained by the

appellate court unless there is no substantial evidence to support it, unless it is

against the weight of the evidence, unless it erroneously declares the law, or

unless it erroneously applies the law. Appellate courts should exercise the power

to set aside a decree or judgment on the ground that it is 'against the weight of

the evidence' with caution and a firm belief that the decree or judgment is wrong."

Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).

 "Constitutional challenges are issues of law … review[ed] de novo. State v.

McCoy, 468 S.W.3d 892, 894 (Mo. banc 2015).9 "In a court-tried civil case it is the

 9The State is challenging a rule promulgated by the University, not the validity "of a statute

or provision of the constitution of this state," and thus this claim does not fall under the exclusive
jurisdiction of the Missouri Supreme Court. See Mo. Const. art. V, sec. 3.

 13
court's duty to judge the credibility of the witnesses and the weight to be given to

their testimony. The judge is free to believe none, part, or all of the testimony

and chooses between conflicting evidence. We defer to these determinations."

White v. R.L. Persons Constr., Inc., 503 S.W.3d 339, 342 (Mo. App. S.D. 2016).

 Analysis

 (a) The State has the burden of proof

 Article I, section 23 of the Missouri Constitution provides:

 That the right of every citizen to keep and bear arms, ammunition, and
 accessories typical to the normal function of such arms, in defense of his
 home, person, family and property, or when lawfully summoned in aid
 of the civil power, shall not be questioned. The rights guaranteed by
 this section shall be unalienable. Any restriction on these rights
 shall be subject to strict scrutiny and the state of Missouri shall be
 obligated to uphold these rights and shall under no circumstances
 decline to protect against their infringement. Nothing in this section
 shall be construed to prevent the general assembly from enacting
 general laws which limit the rights of convicted violent felons or those
 adjudicated by a court to be a danger to self or others as result of a
 mental disorder or mental infirmity.10

(Emphasis added).

 In Dotson v. Kander, 464 S.W.3d 190, 198 (Mo. banc 2015), the Supreme Court

expressly held that "the addition of strict scrutiny to the constitution does not mean

that laws regulating the right to bear arms are presumptively invalid." There, the

Supreme Court stated, "The right to bear arms 'is not unlimited' and there are still

'longstanding prohibitions on the possession of firearms by felons and the mentally

 10We are not called upon to decide if the Rule’s provisions prohibiting the discharge of a firearm

on campus would conflict with this provision if the employee discharged the firearm in defense of
themselves, their family or their property, and therefore do not address such question.

 14
ill, or laws forbidding the carrying of firearms in sensitive places such as schools and

government buildings[.]'" Id. (citation omitted). Notably, the State's argument was

raised and addressed by the dissenting and concurring opinions in Dotson. The

dissenting opinion claimed legislative restrictions on the right to bear arms are

presumptively invalid. Id. at 216. The concurring opinion responded to the

dissenting opinion stating, "This stands at odds with the well-settled legal standard

for constitutional challenges: 'A statute is presumed valid and will be declared

unconstitutional only if the challenger proves the statute clearly and undoubtedly

violates the constitution[.]'"11 Id. at 204. (quoting Lewellen v. Franklin, 441 S.W.3d

136, 143 (Mo. banc 2014) (emphasis added); see also Rentschler v. Nixon, 311 S.W.3d

783, 786 (Mo. banc 2010) ("The person challenging the validity of the statute has the

burden of proving the act clearly and undoubtedly violates the constitutional

limitations."); Cooperative Home Care, Inc. v. City of St. Louis, 514 S.W.3d 571, 578

(Mo. banc 2017) ("The party challenging the validity of the ordinance carries the

burden of proving the municipality exceeded its constitutional or statutory

authority.").

 Since Dotson, the Supreme Court has continually reaffirmed its holding. See

State v. Clay, 481 S.W.3d 531, 533 (Mo. banc 2016) (A statute is presumed valid and

will not be held unconstitutional unless it clearly contravenes a constitutional

 11Likewise, ordinances, regulations, and rules are presumed to be valid and lawful.
Cooperative Home Care, Inc. v. City of St. Louis, 514 S.W.3d 571, 578 (Mo. banc 2017); State ex rel.
Missouri Public Defender Com'n v. Waters, 370 S.W.3d 592, 602 (Mo. banc 2012) (administrative
agency rules and regulations presumed valid). Moreover, as the trial court found, at paragraph 87 of
the Judgment, "the Board of Curators of the University of Missouri is invested by constitutional
mandate as a public entity with the status of a governmental body." Krasney v. Curators of Univ. of
Mo., 765 S.W.2d 646, 649 (Mo. App. W.D. 1989).

 15
provision.); State v. Merritt, 467 S.W.3d 808, 814 (Mo. banc 2015) ("It is clear that

laws regulating the right to bear arms are not 'presumptively invalid.'"); McCoy, 468

S.W.3d at 897; Alpert v. State, 543 S.W.3d 589, 595 (Mo. banc 2018) ("This Court will

presume the statute is valid and will not declare a statute unconstitutional unless it

clearly contravenes some constitutional provision.").

 Here, the trial court followed the analysis set forth by Dotson and its progeny:

 The Court concludes that the Attorney General bears the burden of
 proof, but even if the Court found that the University had the burden of
 proof, the University met that burden of proof based on the evidence
 adduced at trial. . . .The Missouri Supreme Court has held that laws and
 Rules reviewed under Article 1, section 23 are not presumptively
 invalid. Dotson v. Kander, 464 S.W.3d 190, 198 (Mo. 2015).

 ....

 This principle--that Article 1, section 23 does not shift the burden of
 proof to the proponent of the law or regulation--has been reaffirmed in
 every subsequent Missouri Supreme Court case addressing the issue.
 Alpert v. State, 543 S.W.3d 589, 595 (Mo. 2018) . . .State v. Clay, 481
 S.W.3d 531, 533 (Mo. 2016) . . . State v. Merritt, 467 S.W.3d 808, 814
 (Mo. 2015) . . . State v. McCoy, 468 S.W.3d 892, 897 (Mo. 2015).

 These cases make clear, then, that in an Article 1, section 23 case, the
 party challenging the law or regulation bears the burden of proof, and
 that the Rule in this case is not presumptively invalid. However, even
 if the University had the burden of proof, or even if the burden shifted
 to the University, Witte v. Director of Revenue, 829 S.W.2d 436 (Mo. banc
 1992), the University sustained that burden in this case.

 The analysis does not change merely because it is a University rule at
 issue rather than a state law or regulation. That is because "the Board
 of Curators of the University of Missouri is invested by constitutional
 mandate as a public entity with the status of a governmental body."
 Krasney v. Curators of Univ. of Mo., 765 S.W.2d 646, 649 (Mo. Ct. App.
 1989) (emphasis added); see also Article IX, section 9(a) ("The
 government of the state university shall be vested in a board of curators
 consisting of nine members appointed by the governor, by and with the
 advice and consent of the senate."); Mo. Rev. Stat. section 172.100 ("the

 16
 curators shall have power to make such bylaws or ordinances, rules and
 regulations as they may judge most expedient for the accomplishment
 of the trust reposed in them"). Accordingly, the University's Rule is
 entitled to the same deference that any other state law or regulation is
 entitled to under Article 1, section 23.

 The law is clear that the State bears the burden of proof. All authority relied

upon by the State pre-dates the Supreme Court decision in Dotson and its progeny.

The State also cites Louisiana authority holding that laws regulating the right to

bear arms are presumptively invalid in that state, however those cases are

unpersuasive where, as here, the Supreme Court of this state has repeatedly declared

the opposite presumption. "'[T]he Court of Appeals is constitutionally bound to follow

the most recent controlling decision of the Supreme Court of Missouri.'" State v.

Brightman, 388 S.W.3d 192, 199 (Mo. App. W.D. 2012) (citation omitted).

 It is also noteworthy that the State conceded that it had the burden of

proof at the hearing on the parties' respective motions for judgment on the pleadings,

as the trial court noted in the Judgment, footnote 2, which reads:

 Notably, at the hearing in this case on the Parties' respective motions
 for judgment on the pleadings on July 25, 2018, the Deputy Attorney
 General, in addressing the University's Motion stated

 "So this [passage in Dotson] is really responding to text in the dissent
 which is saying, Oh, my goodness, the passage of [the 2014 amendment
 to Article 1, section 23] has now created presumptively invalid laws. Not
 at all. They are presumptively valid, but they are still subject to
 strict scrutiny analysis, and that's the important point, Your Honor."

 7/25/18 Hearing Tr. 102:2-7 (emphasis added).

 Thus, it is clear that the trial court did not err in finding that the State had

the burden of proof. In any event, it is also clear from the record that, even if the

 17
burden shifted to the University, the University met their burden of demonstrating

that the Rule is narrowly tailored to achieve a compelling state interest.

 (b) The Rule is narrowly tailored to achieve a compelling state interest

 Although "'[t]here is no settled analysis as to how strict scrutiny applies to laws

affecting the fundamental right to bear arms,'" it has "'historically been interpreted

to have accepted limitations.'" McCoy, 468 S.W.3d at 897 (citation omitted).

"Additionally, the application of strict scrutiny depends on context, including the

controlling facts, the reasons advanced by the government, relevant differences, and

the fundamental right involved." Id. "'Context matters . . . strict scrutiny is designed

to provide a framework for carefully examining the importance and the sincerity of

the reasons advanced by the governmental decision maker[.]'" Clay, 481 S.W.3d at

535 (quoting Grutter v. Bollinger, 539 U.S. 306, 327 (2003)). "Accordingly, 'that strict

scrutiny applies says nothing about the ultimate validity of any particular law; that

determination is the job of the court applying' the standard." McCoy, 468 S.W.3d at

897 (quoting Dotson, 464 S.W.3d at 197). "'Courts routinely uphold laws when

applying strict scrutiny, and they do so in every major area of the law.'" Id. (citation

omitted). "The right to bear arms 'is not unlimited' and there are still . . . 'laws

forbidding the carrying of firearms in sensitive places such as schools and government

buildings[.]'" Dotson, 464 S.W.3d at 198.

 It has been routinely held and, here, it is undisputed by the State that "[t]he

[University] has a compelling interest in ensuring public safety and reducing firearm-

related crime." McCoy, 468 S.W.3d at 897; In re Care & Treatment of Norton, 123

S.W.3d 170, 174 (Mo. banc 2003) ("The State has a compelling interest in protecting

 18
the public from crime.").12 Although the State concedes the University's compelling

interest in promoting safety and reducing crimes, the State asserts that the

University failed to adduce evidence showing the Rule is narrowly tailored to advance

its interest. We disagree.

 Here, regarding whether the Rule was narrowly tailored to achieve the

compelling interests of promoting safety and reducing crime, the trial court found:

 Based largely on the testimony from law enforcement, the Court finds
 that the Rule satisfies strict scrutiny and is constitutional. The
 University presented unambiguous and essentially unrebutted
 testimony in support of the Rule from two police chiefs with nearly 70
 years of law enforcement experience, backed by statistical evidence. The
 police chiefs explained how and why the Rule is narrowly tailored to
 achieve compelling interests, and how the Rule achieves those
 interests. Notably, one police chief described himself as 'pro gun' and
 the other is a gun enthusiast and accomplished marksman, yet both are
 unequivocally opposed to changing the Rule.

 By contrast, the Attorney General offered no evidence from law
 enforcement and relied solely on a statistician whose opinions arguably
 support the Rule.

 To reach a result based on something other than the evidence adduced
 at trial would be engaging in judicial activism, which the Court will not
 do. The Court must reach a judgment based on the evidence adduced at
 trial, and the evidence adduced at trial supports a finding that the Rule
 is constitutional.

(Emphasis added).

 12
 The trial court also concluded that the University has a compelling interest in creating an
environment that the University concludes is most conducive to its academic mission. The State
claims that the trial court erred in finding the education related interests as vague and unsupported
by empirical evidence. Because we find the Rule is narrowly tailored to achieve the compelling interest
in promoting safety and reducing crimes, we find the Rule survives strict scrutiny, and, as such, need
not address the State's argument regarding the academic interests.

 19
 Specifically addressing the determination that the Rule is narrowly tailored

to the compelling interest of promoting safety and reducing crimes, the trial court

made the following findings of fact:

 43. To summarize their testimony, MU Police Chief Doug Schwandt and
 UMSL Police Chief Dan Freet:

 a. Testified that they are strongly opposed to changing the Rule.
 b. Testified that firearms-related crimes and violent crimes have been
 low with the Rule in place.
 c. Testified that the crime rate and violent crime rate on their campuses
 have been relatively low.
 d. Testified that the Rule has been effective in creating a safe campus.
 e. Testified that currently, firearms theft is not a problem on campus,
 but if the rule were changed the number of firearm thefts will increase,
 especially from cars. Stolen firearms, in their opinion, are then
 frequently used to commit other crimes.
 f. Testified that currently, accidental shootings are not a significant
 problem on campus, but the likelihood of firearms accidents will
 increase if the Rule were changed.
 g. Testified that suicides on campus are a significant concern, but that
 currently the incidence of firearm-related suicides is low. They testified
 that if the Rule were changed, the number of firearm-related suicides
 will likely increase. Chief Schwandt testified that campus police can
 often prevent a non-firearm suicide or rescue the person in time; suicide
 attempts by firearm, however, almost always result in death.
 h. Testified that properly managing an active shooter situation and
 "target misidentification" are concerns on campus. They testified that
 if the Rule is changed it will make proper target identification more
 difficult during an active shooter situation. They testified that if, due to
 the presence of firearms on campus, the police accidentally targeted the
 wrong person, the result would be catastrophic for the innocent person
 shot and for the University.
 i. Testified that currently, the Rule allows police officers to do their jobs
 because it is easy to administer: The police know immediately that if
 they see a firearm on campus, the firearm is not supposed to be there.
 If the Rule is changed, they testified that this will increase the
 administrative burden on University police officers: A Rule change
 would make it substantially more difficult to determine who may
 possess a firearm on campus and will take time away from officers' other
 law enforcement and public safety duties.

 20
j. Testified that the "response time" once campus police are called is
very fast. For this reason, neither police chief thinks firearms are
necessary for an individual's protection on campus.
k. Testified that the Rule includes exceptions for law enforcement
officers in the line of duty and for approved programs.

44. Having witnessed their testimony firsthand, the Court finds Chief
Schwandt's and Chief Freet's testimony credible and persuasive. They
are gun enthusiasts with nearly 70 years of law enforcement experience,
and they are unequivocally opposed to changing the Rule.

45. Notably, the Attorney General offered no testimony from any
current or former law enforcement official.

The Statistical Evidence Presented by the Parties

The Attorney General's Statistical Expert: Dr. Carlisle Moody

46. At trial, the Attorney General called only one witness: Dr. Carlisle
Moody, a statistician and professor at the University of William and
Mary.

47. Dr. Moody's statistical opinions arguably corroborate the law
enforcement testimony of Chief Schwandt and Chief Freet and the
testimony of the University's statistical expert Dr. John Donahue, infra.
Even giving Dr. Moody's opinions their most favorable construction,
they are at best inconclusive and do not provide the Court with a basis
for second-guessing law enforcement and finding the Rule
unconstitutional.

....

57. Every test and model in Dr. Moody's Report and Supplement points
in the same direction: Violent crime—again, defined by Dr. Moody to
include murder, rape, robbery and assault—always increased, either
in absolute or relative terms, after colleges started allowing
firearms on campus, and this was true whether firearms were allowed
on campus generally or possession was limited to trunk storage.

58. Dr. Moody's Report, Supplement and trial testimony only addressed
the University's Columbia campus; he did not provide any opinions
relating to the University's St. Louis campus, Rolla campus, or Kansas
City campus.

 21
59. Furthermore, Dr. Moody only addressed the University's interest in
reducing violent crime. Dr. Moody did not testify about any other
interest the University has in the Rule. Those other interests, discussed
below, include preventing firearms-related suicides; reducing accidental
shootings; reducing firearm thefts; reducing the administrative burden
on law enforcement; reducing the likelihood of target misidentification
during active shooter situations; and promoting the academic
environment of the University consistent with its mission.

The University's Statistical Expert: Dr. John Donohue

60. The University called Dr. John Donohue as an expert witness. Dr.
Donohue is a lawyer, statistician and professor at Stanford Law School.
Defs.' Ex. 1. His research focuses on the statistical impact of laws and
public policy, and he has spent decades studying the impact of firearms
laws and regulations on public safety and crime.

....

65. Dr. Donohue opined that theft and firearms thefts increase after
passage of right to carry laws.

....

67. Dr. Donohue testified that the results of Dr. Moody's Report and
Supplement—that violent crime always increased in absolute or relative
terms after colleges started allowing firearms on campus—were
consistent with his own findings. Similarly, he was not surprised that
Dr. Moody did not find the impact of the change in firearms policies at
universities was "statistically significant," because these policies have
only been changed in the last few years and there is often a time-lag
between a regulation's being implemented and being able to detect its
impact at a statistically significant level.

....

69. The Court finds that Dr. Donohue's opinions are not specific to
universities, and therefore are entitled to somewhat less weight than if
he had opined strictly about campus-specific statistics. His opinions are,
however, statistically reliable, and his overall testimony, like that of the
Attorney General's expert Dr. Moody, corroborates the testimony of law
enforcement regarding the Rule.

 22
(transcript citations omitted).

 We agree with the trial court's assessment of the evidence presented at trial.

The evidence presented by the University's three witnesses support the conclusion

that the Rule is narrowly tailored to achieve a compelling governmental interest.

 Moreover, even if the trial court erred in finding that the Rule is narrowly

tailored to achieve a compelling governmental interest, the State's challenge of the

trial court's strict scrutiny determination still fails. This is because the trial court

found the Rule survives strict scrutiny under each of three alternate standards.13 In

addition to finding the Rule survives the "narrowly tailored to advance the compelling

governmental interest" formulation, the trial court made the additional findings that

the Rule survives the alternate and less stringent strict scrutiny tests of "reasonable,

non-discriminatory restrictions serving important regulatory interests" and "long

history" or "substantial consensus." See Clay, 481 S.W.3d at 535; Merritt, 467 S.W.3d

at 814. But, the State only claims error with the trial court's findings that the Rule

survives strict scrutiny under the "narrowly tailored to advance the compelling

governmental interest" formulation, the "most stringent formulation." Clay, 481

S.W.3d at 535. Thus, even if we were to find that the Rule did not pass the "narrowly

tailored to advance the compelling governmental interest" formulation, which we are

 13"While most commonly courts apply strict scrutiny by determining whether a law was
narrowly tailored to achieve a compelling state interest, in other cases, depending on the extent the
regulation burdens a particular right, the courts look to whether a regulation imposes 'reasonable,
non-discriminatory restrictions' that serve 'the State's important regulatory interests' or whether the
encroachment is 'significant.'" Clay, 481 S.W.3d at 535. Additionally, in Merritt, 467 S.W.3d at 814,
our Supreme Court found a Supreme Court of Louisiana case persuasive where that court found "'a
long history, a substantial consensus, and simple common sense' to be sufficient evidence for even a
strict scrutiny review." (citation omitted).

 23
not, the trial court's findings that the Rule survives strict scrutiny under the

"reasonable, non-discriminatory restrictions serving important regulatory interests"

and "long history" or "substantial consensus" formulations remain.14

 The trial court did not err in finding that the State had the burden of proof and

in finding that the Rule is narrowly tailored to advance a compelling government

interest.

 Points II and III are denied.

 Point IV--Dr. Choi's testimony

 In Point IV, the State asserts the trial court erred and abused its discretion in

admitting opinion testimony from Dr. Choi, in overruling a motion to strike it, and in

relying on that testimony because the testimony was inadmissible lay testimony, in

that Dr. Choi repeatedly testified about unidentified studies he relied on, unidentified

conversations he had, and his opinions about the ultimate issues in this case, to the

prejudice and surprise of the State, since he was not disclosed during discovery as an

expert witness.

 Dr. Choi's testimony relates solely to the University's academic interests.

Thus, while experienced law enforcement officers and statisticians provided credible,

competent evidence as to the compelling interest of promoting safety and reducing

crimes, Choi opined on an altogether different, rather esoteric and ethereal, interest

 14We note that the State may have recognized their dilemma, and in its reply argued there is

only one standard and that the same result would be reached under each formulation. We disagree.
Clay references that "narrowly tailored to achieve compelling state interest" is the most stringent of
the formulations. 481 S.W.3d at 535. Moreover, arguments omitted from an appellant's initial brief
may not be supplied in the reply brief, and we are precluded from addressing arguments made for the
first time in the reply brief. Berry v. State, 908 S.W.2d 682, 684 (Mo. banc 1995); Coyne v. Coyne, 17
S.W.3d 904, 906 (Mo. App. E.D. 2000).

 24
as an alternative. In light of our determination in Point III, that the Rule is narrowly

tailored to achieve the compelling interest of promoting safety and reducing crimes

and thereby survives strict scrutiny, we need not determine whether Dr. Choi's

testimony pertaining to an alternative, alleged, compelling interest was proper.

 Point IV is denied.

 Conclusion

 Because we find as a matter of law that the Rule does conflict with, and is

preempted by, Section 573.030.6, we reverse that portion of the trial court’s decision

and remand for further proceedings consistent with this opinion. We affirm that

portion of the judgment finding the Rule to be constitutional, to the extent such Rule

is not in conflict with 571.030.6.

 __________________________________________
 W. DOUGLAS THOMSON, JUDGE
All concur.

 25